FRAILING, Respondent, vs. SIEBER, imp., Appellant.

*November 9—December 3, 1918.*

*Bills and notes: Liability of undisclosed principal: Husband and
wife: Evidence as to agency.*

1. Under sec. 1675—18, Stats., where a promissory note was
signed only by a husband in his own name, an indorser who
was compelled to pay the note cannot hold the wife of such
maker liable as a principal thereon.
2. Testimony of a husband, who had been separated from his
wife, that she knew of his borrowing money and giving his
notes therefor on several occasions, and that she not only
consented thereto but urged and directed him to do so, was
insufficient to show that he gave such notes as her agent or
to establish her liability as an undisclosed principal, although
such borrowings were all connected with a liability originally
incurred for farm machinery bought for use both on his
farm and on one owned by her, it appearing, among other
things, that she did not consider herself liable for the ma-
chinery and had refused to sign the notes with him at the
time of the first borrowing.

APPEAL from a judgment of the circuit court for Shawano county: W. B. QUINLAN, Judge. *Reversed.*

The defendants John Sieber and *Hannah Sieber* are husband and wife. At the time of their marriage *Hannah Sieber* was the owner of eighty acres of land and John Sieber owned twenty-seven acres of land which he farmed in connection with a rented forty. Certain farm machinery was bought which was used in cultivating both farms. Whether the defendant *Hannah Sieber* was liable for any of this farm machinery may be said to be a controverted question. They were eventually sued for the purchase price thereof. They then together went to town, Shawano, saw a lawyer, and arranged a settlement. The defendant John Sieber borrowed $300 from the First National Bank at Shawano and gave his note therefor. This note was renewed once. When the renewal note became due the defendant John Sieber borrowed $300 from the Citizens State Bank of Shawano and paid the First National Bank. The note to the Citizens State Bank was indorsed by a brother of the defendant *Hannah Sieber.* When the note to the Citizens State Bank became due *Hannah Sieber* gave the bank her individual note for $135, and John Sieber borrowed $225 from one Henry Gundorf with which he paid the balance of the $300 note to the Citizens State Bank. When the Gundorf note became due the defendant John Sieber went to the Caroline State Bank and borrowed $250 with which to pay the Gundorf note. The note to the Caroline State Bank, as the others, was signed only by John Sieber. It was indorsed by plaintiff, *John Frailing.* *Frailing* was obliged to pay the $250 note to the Caroline State Bank, and he brought this action against John Sieber and *Hannah Sieber* to recover the amount paid. He seeks to hold the defendant *Hannah Sieber* on the ground that John Sieber signed the note as her agent and that she is liable as an undisclosed principal.

A special verdict was returned by the jury, by which they

found (1) that *Hannah Sieber* directed and instructed John Sieber to borrow $300 from the First National Bank of the city of Shawano with which to settle up the machinery case; (2) that *Hannah Sieber* authorized and directed John Sieber to borrow the money to pay the note to the First National Bank; (3) that *Hannah Sieber* authorized and directed *John Sieber* to pay the Citizens State Bank; (4) that *Hannah Sieber* authorized and directed John Sieber to borrow money to pay the Genskow (Gundorf) note; (5) that the defendant *Hannah Sieber* purchased the farm machinery in question; and (6) that the separate estate of *Hannah Sieber* benefited by the money which the plaintiff was compelled to pay on the note executed by John Sieber to the Caroline State Bank to the extent of $258.75. Upon this verdict judgment was rendered against the defendants John Sieber and *Hannah Sieber,* and the defendant *Hannah Sieber* appealed.

The cause was submitted for the appellant on the brief of *Dillett & Winter* of Shawano, and for the respondent on that of *Eberlein & Larson* of Shawano.

OWEN, J. It will be noted that the defendant *Hannah Sieber* did not sign the note which was indorsed by the plaintiff *John Frailing* and which he was compelled to pay. Sec. 1675—18, Stats. (negotiable instrument law), provides: "No person is liable on the instrument whose signature does not appear thereon, except as herein otherwise expressly provided." This is a statutory embodiment of pre-existing well settled law. Daniel, Neg. Inst. § 303; 2 Corp. Jur. p. 525; 7 Cyc. 549; 21 Ruling Case Law, p. 895. Speaking of the rule that no party can be charged as principal upon a negotiable instrument unless his name is thereon disclosed, Mr. Daniel, in his work on Negotiable Instruments (5th ed.), § 303, says:

"The reason of this rule is that each party who takes a negotiable instrument makes his contracts with the parties

who appear on its face to be bound for its payment; it is 'a courier without luggage,' whose countenance is its passport; and in suits upon negotiable instruments, no evidence is admissible to charge any person as a principal party thereto, unless his name in some way is disclosed upon the instrument itself; although upon other written contracts, not negotiable, it is often competent to show that, although signed in the name of the agent only, they were executed in the business of the principal, and with the intent that he should be bound. And in such cases he is bound upon them accordingly. The rule excluding parol evidence to charge an unnamed principal as a party to negotiable paper is derived from the nature of such paper, which being made for the purpose of being transferred from hand to hand, and of giving to every successive holder as strong a claim upon the original party as the payee himself has, must indicate on its face who is bound for its payment; for any additional liability not expressed in the paper would not be negotiable."

This principle, now embodied in our statutes, evidently overlooked by the trial court in its disposition of the case, is fatal to the judgment against *Hannah Sieber*.

While the judgment must be reversed for the reason already stated, a reversal is necessary for the further reason that there are no facts disclosed by the record justifying a conclusion that in the execution of the various notes John Sieber acted as the agent of *Hannah Sieber*, if in fact that was the effect of the jury's verdict. The defendant John Sieber, who at the time of the trial had separated from his wife and codefendant, *Hannah Sieber*, was a willing witness for the plaintiff, and testified that she was cognizant of the fact that he had borrowed the money on the several occasions mentioned and that he had given his notes therefor; that she not only consented thereto, but urged and directed him to do so. This is the only evidence from which it may be inferred that he was acting as her agent in borrowing the money. It falls far short of establishing the relation of principal and agent. It reveals nothing more than the natural conferences and conversations that might be expected to

take place between husband and wife under such circumstances, as a result of the confidential relation and unity of interest. It appears, however, very satisfactorily from the evidence that *Hannah Sieber* did not consider that she was liable for the machinery. She not only failed but refused to sign the notes with him, although she was in town at the time he borrowed the first $300. When the $300 note became due at the Citizens State Bank she gave her individual note for $135, which was the price of the binder, and which indicates pretty conclusively that she did not propose to bind herself for the payment of the balance. More than this, when her note for $135 was executed in partial payment for the $300 note in the Citizens State Bank it left but a balance of $165. To pay this he borrowed $225, and when the $225 note became due he borrowed $250, all of which, with interest, the jury finds inured to her benefit, although it appears conclusively that the difference between $165 and $250 must have been otherwise used by the husband, John Sieber. It furthermore appears that she had in the neighborhood of $3,000 in cash, and if this were her individual indebtedness it was unnecessary for her to borrow money and appeal to outside parties for security. If she can be held liable as an undisclosed principal on evidence such as this, it points the way for faithless husbands to dissipate and squander the separate estates of their wives.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint as to the defendant *Hannah Sieber*.