LIPMAN and another, Respondents, vs. MANGER and another, Appellants.

*October 15—November 11, 1924.*

*Bills and notes: Signature by agent: How effected: Liability of undisclosed principal: Pleading: Conclusions of law: Pleader entitled to some relief: Demurrer: Fraud: Statement as to ownership of corporate stock: Reliance on representation: Fraudulent conveyances: Remedies of general creditor.*

1. An allegation in a complaint that the fact that a promissory note was given and other transactions made by a certain person did not constitute a note given by him nor transactions made for him, but merely by him as agent for his undisclosed principal, named, is a mere conclusion of law. p. 70.

2. Courts may not disregard the plain provisions of statutes regulating the manner in which liability may or may not be assumed on negotiable instruments (secs. 116.22 and 116.23, Stats.); and where there is no allegation that the defendant signed a note in a trade name or an assumed name, or that the person who signed the note was her duly authorized agent within the statute, no cause of action is stated against the defendant. p. 70.

3. The complaint, however, states a cause of action for fraudulent representations by defendant and others that her husband owned practically all the stock of a corporation to which certain moneys, for which the husband gave his note, were advanced by plaintiffs in reliance on such representations and in ignorance of the fact that the defendant was owner of practically all the stock.   p. 71.

4. A complaint which shows that plaintiffs were entitled to some relief which the court has power to grant, when given every reasonable inference is not subject to a general demurrer. p. 71.

5. Misrepresentations, to constitute actionable fraud, must be relied on and be made under such circumstances as to justify such reliance.   p. 72.

6. The alleged misrepresentations as to the ownership of the stock of certain corporations, in lieu of whose obligations to plaintiff the latter accepted the note of the supposed owner, who was so involved shortly afterward that he could not continue business, and died insolvent, are material on the issue as to whether plaintiff relied thereon instead of on the agreements under which moneys were advanced to the corporations. p. 72.

7. On demurrer the decision of this court must be based on the allegations of the complaint.   p. 72.

8. An averment of the complaint that, because the entire assets of a corporation consisted of money belonging to plaintiffs, it became plaintiffs' debtor, is a mere conclusion of law not admitted by a demurrer.   p. 73.

9. General creditors desiring to follow property fraudulently transferred by one debtor to another must first procure judgment against the real debtor and exhaust their remedies against her.   p. 73.

Appeal from orders of the circuit court for Milwaukee county: Gustave G. Gehrz and Oscar M. Fritz, Circuit Judges. *Affirmed in part; reversed in part.*

The cause was submitted for the appellants on the brief of *Hammersley, Barry & Torke* of Milwaukee, and for the respondents on that of *Schmitz, Wild & Gross* of Milwaukee.

Jones, J. This is an appeal from an order overruling demurrers to a complaint. Each defendant demurred gen-

erally and on the ground that several causes of action were improperly united. The complaint is very long and we shall only state its contents so far as is necessary to present the points involved. The defendant *Clara Manger* married Arthur Manger in 1901. Between that time and 1911 Arthur Manger became involved in business and was unable to continue, and then *Clara Manger* took over the business, operating it as a sole trader in the name of Arthur Manger, he acting as the manager. In 1911 *Clara Manger* and two others incorporated the Arthur Manger Company with $10,000 capital, and *Clara Manger* took ninety-eight shares, which constituted ninety-eight per cent. of the stock. She turned over to the company all the assets in consideration of such stock. Afterwards the articles of incorporation of the company were amended and the name changed to the Manger-McGucken Construction Company, which operated the same till near the end of 1919, but before the end of 1919, on September 19, 1919, *Clara Manger,* with Arthur Manger and Herbert R. Manger, incorporated the *Manger Construction Company* with the same capital stock, paid for from the property withdrawn from the other companies, *Clara Manger* having ninety-eight per cent. of the stock issued in this new company also. On or about December 23, 1915, the plaintiffs made an agreement with Arthur Manger to finance the work of the Arthur Manger Company, and agreed to advance the money, which was to be repaid after the completion of the work. It was intended by all parties, including *Clara Manger,* that all money advanced under the agreements was to be advanced to the corporations and secured by the owner of the ninety-eight shares of stock in the three companies, Arthur Manger Company, Manger-McGucken Construction Company, and the *Manger Construction Company,* and that the plaintiffs were led to believe that Arthur Manger was the owner; that the plaintiffs were led to believe, and it was represented to

them by all the parties connected with the said companies, that Arthur Manger owned practically all of the shares of stock of the said three companies; that the money was advanced on such representations under the said agreement and also under others of January 2, 1917, and June 1, 1918; that *Clara Manger* knew that the money was advanced on such representations and that the plaintiffs financed the Arthur Manger Company and the Manger-McGucken Construction Company and the money went into the said companies and that profits were made as the result. *Clara Manger* from time to time drew money from the said companies and took and kept property which should have been used to pay the plaintiffs and put part of said money into the *Manger Construction Company* to pay for the stock; that the money was advanced under the said agreements by the delivery of checks to Arthur Manger and as the work progressed; that the plaintiffs cannot state the details, but that *Clara Manger* would be able to determine them from the books of the companies. On June 1, 1918, amounts were due to the extent of $36,000; that the plaintiffs then believed that Arthur Manger was the owner of practically all of the shares of stock held in the name of *Clara Manger*, and the plaintiffs made an agreement with the board of directors of the Manger-McGucken Construction Company and Arthur Manger that the plaintiffs would accept Arthur Manger as their creditor for the sum of $18,307.22 and released the corporation of so much, and by the agreement Arthur Manger gave the plaintiffs his note for that amount, which was later taken up on January 2, 1919, by another note for $26,971.13 payable in one year with interest at six per cent., which represented the former note and other advances, such advances being money paid for the same purposes as before. It was then understood that the plaintiffs were dealing with the owner of ninety-eight per cent. of the stock in the said companies and that the note was given by the owner of said stock in the said companies, and

that it was agreed that no money should be diverted, but that it would first be used to pay the advances; and the plaintiffs allege that the fact that said note was given and other transactions made by Arthur Manger did not make the note given by him or the transactions made by him his note and his transactions, but those of an undisclosed principal, *Clara Manger;* that *Clara Manger* represented that no money was withdrawn from the said Arthur Manger Company, but that she was withdrawing and diverting it, and that if the plaintiffs had been informed of the facts they would have insisted that she sign all of the notes for their protection and would not have permitted funds to have been withdrawn; that she invested their funds in the *Manger Construction Company* and also in land and other investments for her own use; that all assets of the *Manger Construction Company* consist of money that belongs to the plaintiffs, and by reason thereof the defendant company became the debtor of the plaintiffs; that *Clara Manger* and the officers of the said corporations represented that the stock issued to her was the property of Arthur Manger and that all the money and property taken from the said corporations and not used for the operation of the business would be used to pay off the advances; that these were false representations and were intended to be acted on by the plaintiffs, as she knew, and that the plaintiffs relied on them and accepted the said note of Arthur Manger; that Arthur Manger died intestate without any property; that all of the property that the plaintiffs were led to believe was his was that of *Clara Manger*, his principal; and that the defendant company and *Clara Manger* were liable on the note; that $3,000 has been paid on the note, leaving a balance of $23,971.13 and interest unpaid. Judgment is demanded against *Clara Manger* for the said $23,971.13 and interest and against the company for $9,800.

The agreement of January 2, 1917, between the Arthur Manger Company and the plaintiffs, after various recitals,

stated that the Arthur Manger Company was to execute a
note for $30,000, payable in one year at six per cent. inter-
est, and was to deliver to the plaintiffs a bill of sale of all
its rolling stock listed and every other article to be used in
connection with the excavating business; the company to be
able to sell any property not necessary for its business if it
turned over the proceeds to the plaintiffs, the same to be
deducted from the amount of the note and the plaintiffs to
execute a bill of sale to the company for such property on
request; a certain note and mortgage of $5,000 also to be
turned over to the plaintiffs as collateral to be held in the
same manner; the company also was to assign all its interest
in certain claims for amounts stated in the contract, with
power to collect and apply the same.

In the contract of June 1, 1918, between the plaintiffs and
the Manger-McGucken Construction Company, after cer-
tain recitals, it is stated that at the request of the plaintiffs
the Arthur Manger Company changed its name and consoli-
dated its business with that of Arthur Manger and Robert
M. McGucken, a partnership under the firm name of Manger
& McGucken Construction Company; that said consolida-
tion provided for the increased security of the indebtedness
and for the investment of capital in the business of Robert
M. McGucken and for the earlier payment of the debt, and
whereas members of the partnership have followed the re-
quest, it was agreed that the plaintiffs were to loan from
January 1, 1918, to December 31, 1920, the necessary money
to carry on the business, and the corporation agrees to pay
all money loaned with interest; the company agrees to issue
to each of the plaintiffs one share of stock and to cause them
to be elected directors, and to pay in addition to interest
five per cent. each year on the loans to be made; and in the
case of the death of one of the plaintiffs the survivor to
carry out the terms of the contract as if both of them were
alive, but in case of the death of both of the plaintiffs their
estates were not to be liable; that the company was to assign

all contracts as collateral security; and the contract provided for a continuance of three years after the expiration of the term, but either party might terminate the agreement upon sixty days' notice being given. It was agreed that all prior agreements, oral or written, between the plaintiffs and the corporations or the plaintiffs and the said partnership were terminated and merged and consolidated in this agreement, and that all loans made by the plaintiffs to the company or to members of the said partnership after June 1, 1918, were to be 'subject to the terms of this agreement.

As part of the relief claimed the plaintiffs ask judgment on the note described in the complaint, which was given for the balance due on the first note and interest and advances. So far as appears from the complaint, up to June 1, 1918, all the advances had been made to the two corporations first organized. But on that date it is alleged that the plaintiffs agreed to release the Manger-McGucken Construction Company from indebtedness of $18,307.22 and to accept Arthur Manger as their debtor for that amount. It is argued by the plaintiffs' counsel that notwithstanding the form of the transaction both notes were in fact the notes of *Clara Manger*. Although Arthur Manger never was the owner of the corporate shares, he seems to have figured as the representative of the corporations, and it was to him that the advances were paid for the corporations and it was he who was accepted on June 1, 1918, as the debtor of the plaintiffs.

The plaintiffs' counsel argue that *Clara Manger* was an undisclosed principal and that Arthur Manger was her agent, and they rely on the allegation "that it was understood that the plaintiffs were dealing with the owner of the ninety-eight shares of stock in said company and that said note was given by the owner of said stock," and the following averment: "Plaintiffs further allege that the fact that the said promissory note was given and other transactions made by said Arthur Manger do not constitute a note

given by him or transactions made for him, but merely by him as agent for his undisclosed principal, which said undisclosed principal was *Clara Manger.*" Clearly the last statement is a mere conclusion of law.

For the respondents some reliance is placed on the case of *Bosanich v. C., N. S. & M. R. Co.* 173 Wis. 280, 181 N. W. 297, in which it was said that under some circumstances, where an owner manages his property through a corporate agency, courts have refused to recognize the fiction of corporate existence and have treated the act of the owner as the act of the corporation, or *vice versa*. But this decision cannot be construed as holding that the courts may disregard the plain provisions of statutes regulating the manner in which liability may or may not be assumed on negotiable instruments. The following sections of the statutes are directly in point:

Sec. 116.22 "No person is liable on the instrument whose signature does not appear thereon, except as herein otherwise expressly provided. But one who signs in a trade or assumed name will be liable to the same extent as if he had signed his own name."

Sec. 116.23 "The signature of any party may be made by a duly authorized agent. No particular form of appointment is necessary for this purpose; and the authority of the agent may be established as in other cases of agency."

There is no allegation from which it can be inferred that *Clara Manger* signed the note in a trade name or an assumed name or that Arthur Manger was her duly authorized agent within the meaning of the statute. These sections are declaratory of the rule existing at the time the statutes were adopted. It was a rule which had been long recognized as necessary to facilitate the transfer of negotiable paper and to protect those dealing in it from suffering loss by reason of conditions and contracts not disclosed by the note or bill. In *Frailing v. Sieber,* 168 Wis. 259, 169 N. W. 607, many facts were relied on to establish the liability of

a wife on a note signed by her husband only. In an opinion by Mr. Justice OWEN it was held that the statutes prevented recovery, and the reason for the rule was stated. It is our conclusion that the complaint states no cause of action on the note.

The complaint is broad enough to raise the question whether there is stated a cause of action for fraud. The complaint is very inartistically drawn and it is far from a model of good pleading. It purports to state the transactions of the plaintiffs with three corporations extending from 1911 to 1919, and sets forth three different contracts for financing two of the corporations. There is much uncertainty as to the dates of the alleged misrepresentations and as to the persons and officers who made them. Representations as to existing facts and past events are mingled with mere promises. Some of the representations are vaguely stated, and not clearly and concisely as good pleading requires. Nevertheless, there can be found in our Reports many cases in which complaints have been sustained on demurrer although they were subject to just criticism. It is unnecessary to cite authorities for the prevailing rule that if a complaint, giving it every reasonable inference, shows that the plaintiffs are entitled to some relief which the court has the power to grant, it is not subject to a general demurrer. Disregarding allegations as to promises, it may be gleaned from the allegations that *Clara Manger* and others represented to the plaintiffs that at the time the statements were made Arthur Manger was the owner of practically all the shares of stock of at least two of the corporations involved; that the moneys were advanced under the several agreements set forth in the complaint; that *Clara Manger* knew that the advances were being made by the plaintiffs relying on such representations; that in fact *Clara Manger* and not Arthur Manger was the owner of practically all of the stock in question; that *Clara Manger* drew out of two of the corporations and converted to her

own use moneys and property which under the agreements should have been devoted to the payment of the advances; that the two notes were given and accepted by the plaintiffs in reliance on such misrepresentations and in ignorance of the real facts of the case.   In brief, that these several misrepresentations were false and were made by *Clara Manger* knowing them to be false, and that they were relied on by the plaintiffs.   Counsel for the defendants cite many cases as authority for the rule that, in order to render the misrepresentations actionable fraud, they must be relied on and made under such circumstances as to justify such reliance.   This is so well settled as to call for no discussion. Applying this rule, counsel next argue that the averments as to the ownership of the stock are immaterial and that it appears from the complaint that the plaintiffs did not rely on them because it appears that they relied on the agreements, Exhibits A and B.   When the second note was taken it appears that the corporation was released from all obligations and that the plaintiffs in lieu thereof accepted the note of Arthur Manger.   In 1911 he was so involved that he could not continue the business.   He died insolvent.   It is not improbable that he was insolvent when he signed the note.   It seems to us that under these circumstances the representation that he was practically the owner of a corporation, a going concern, having considerable property, was material and well calculated to induce the giving of the credit.

In a trial on the facts it might be a question whether the written agreements do not strongly tend to show that reliance was placed on their provisions instead of the representations made by *Clara Manger*.   But on demurrer our decision must be based on the allegations of the complaint. And we cannot say as a matter of law that the plaintiffs did not rely, or were not justified in relying, on the representations set forth in the pleading.   In our opinion the complaint states a cause of action for fraudulent misrepresentation or deceit against the defendant *Clara Manger*.

Is there a cause of action stated as against the defendant corporation? This was the last of the several corporations, and was not organized until September 19, 1919. All the advances of money to the other corporations had been made by the plaintiffs some time before and it does not appear that any were made to this defendant. True, it is alleged that *Clara Manger* invested money belonging to the plaintiffs in the *Manger Construction Company* and "that the entire assets of the defendant *Manger Construction Company* consist of money that belonged to the plaintiffs herein as hereinabove alleged, and that by reason thereof said defendant company became a debtor of the plaintiffs." Obviously the averment that the defendant company thus became a debtor of the plaintiffs is a mere conclusion of law not admitted by the demurrer. It can hardly be claimed that as against the defendant company the complaint is good on the theory that it is in the nature of a creditors' bill. If the plaintiffs were general creditors and desired to follow property fraudulently transferred to her codefendant, it would be necessary first to procure judgment against the real debtor and exhaust their remedies against her. *Rozek v. Redzinski,* 87 Wis. 525, 58 N. W. 262; *Meissner v. Meissner,* 68 Wis. 336, 32 N. W. 51; *Krouskop v. Krouskop,* 95 Wis. 296, 70 N. W. 475. It follows that no cause of action is stated against the *Manger Construction Company* and that as to such defendant the complaint should be dismissed.

It appears from the record that several motions to make the complaint more definite and certain had been made, and pursuant to an order a bill of particulars had been filed. The defendants appealed from so much of a final order as denied a motion that several causes of action be separately stated. Since it is the result of our decision that only one cause of action is stated, discussion of the appeal from this order is unnecessary, and the order is affirmed.

To recapitulate, we hold that, although no cause of action is stated on the promissory note, there is stated a cause of action for fraud against *Clara Manger;* that there is no

cause of action stated as against the defendant corporation and as to it the action should be dismissed; that the order denying a motion that several causes of action be separately stated is affirmed.

*By the Court.*—The order overruling the demurrer of *Clara Manger* and the order denying the motion that several causes of action be separately stated are affirmed. So much of the order as overrules the demurrer of the *Manger Construction Company* is reversed, and the cause is remanded with instructions to enter an order sustaining the demurrer and dismissing the complaint as to the said defendant.