Grebe v. State.

---

WILLIAM F. GREBE ET AL. V. STATE OF NEBRASKA.

FILED MARCH 18, 1925. No. 24270.

1. **Officers:** USURPATION OF OFFICE. There is no state sheriff in Nebraska, and no criminal charge for usurpation of an office

so designated can be sustained. Nor can one be convicted of usurpation of any office without proof that his usurpation is wilful or mischievous.

2. **False Imprisonment.** False imprisonment is the unlawful restraint of a person without his consent, either with or without process of law.

3. ———. *Held*, in this case, that there was error in the conviction of plaintiffs in error upon counts one, two, and three of the information.

ERROR to the district court for Sarpy County: JAMES T. BEGLEY, JUDGE. *Affirmed in part, and reversed in part.*

*C. J. Campbell, A. L. Tidd* and *A. E. Langdon*, for plaintiffs in error.

*O. S. Spillman, Attorney General*, and *Harry Silverman*, *contra.*

Heard before MORRISSEY, C. J., ROSE, DAY, THOMPSON, and EVANS, JJ., and SHEPHERD, District Judge.

SHEPHERD, District Judge.

Plaintiffs in error were convicted on all four counts charging as follows: First, that on the 4th day of November, 1923, they had usurped the office of deputy state sheriff; second, that on the 28th day of November of the same year they had been guilty of a like offense; third, that on the 4th day of November, 1923, they had falsely imprisoned William Schwartz by directing him to appear at the office of the sheriff of Sarpy county on the day following; and, fourth, that on said 28th day of November they had unlawfully assaulted Schwartz. They were each fined $50 on count one, $50 on count two, $250 on count three, and $50 on count four.

In this court they present a large number of assignments of error. Many of these deal with the matter of usurping the office of deputy state sheriff. There is no state sheriff in Nebraska, and no deputy state sheriff. It is true that the governor is made chief law enforcement officer in the matter of offenses against the liquor laws of the state, and

is empowered to call citizens to his assistance in this be-
half.   Mr. Carroll was the governor's duly appointed
deputy, and signed his official communications as deputy
chief law enforcement officer.   Other persons named in the
evidence were appointed by the governor to assist, and were
continuously employed.

The parties agree in their briefs that the statute under
which the information was filed is section 9713, Comp. St.
1922, which reads as follows:

"Whoever shall take upon himself to exercise or officiate
in any other office or place of authority, in this state, with-
out being legally authorized, shall be fined in a sum not
exceeding two hundred dollars, or imprisoned in the jail of
the county, and be fed on bread and water only, not exceed-
ing ten days, or both."

It is insisted that, since there was no such office as deputy
state sheriff, no crime of the kind charged in these two
counts was committed, or could have been committed.   It
would seem impossible for any one to usurp an office which
does not exist.   The language of the statute, as interpreted
in *Kreidler v. State,* 24 Ohio St. 22, and *Eubank v. Com-
monwealth,* 126 Ky. 348, assists us in arriving at this con-
clusion.   Nor do we doubt that it was the duty of the court
to say whether or not the thing charged constituted a crime.
The court left the question to the jury, and this we think
was reversible error in itself.   In the second place, even
had there been such an office as deputy state sheriff, there
was no evidence to establish a usurpation of such office.   In
the case of *Kreidler v. State, supra,* the court said that to
be guilty under the statute (the Ohio statute is similar to
ours) the accused must occupy and act without color of
right, and his assumption to act must be such as to indi-
cate wilful usurpation.   This applies directly to the case of
plaintiffs in error.   These young men were appointed by
the deputy state law enforcement officer, Mr. Carroll.   The
governor's secretary testified that persons so appointed
were confirmed and certified by his chief as a matter of
course.   They were given a star or badge which was in-

scribed with the words "Deputy State Sheriff." Under the circumstances and under the proofs it is indisputable that they did what they are charged with doing under color of office and without intent to wilfully usurp.

We agree also with counsel for plaintiffs in error that the charge of false imprisonment was not sustained by the evidence. The evidence shows beyond dispute that the accused found the complaining witness, Schwartz, in the commission of an unlawful act, the keeping of more intoxicating liquor than was reasonably sufficient for his personal use and needs. The statute provides that "no person shall keep or possess intoxicating liquor in his private dwelling-house in an amount more than is reasonably sufficient for his personal use and needs," and makes the matter of possession *prima facie* evidence of guilty purpose. Comp. St. 1922, sec. 3247. It also makes such keeping a misdemeanor. The culmination of the direction to Schwartz to appear in Papillion the next day was that he reported at the county attorney's office on the 5th, and a day or two after pleaded guilty to the misdemeanor in question. Plaintiffs in error and Mrs. Schwartz testified that the deputy sheriff of the county, who was called and who came to the house immediately after the discovery of the liquor, gave said direction to appear. Schwartz himself swore that all the deputy said to him was, "Hello, Bill," a statement scarcely believable in view of the fact that the two men were well acquainted, and that the deputy was there a long time loading the liquor into his truck, and then remained 15 or 20 minutes after the others had departed.

Obviously the deputy had the right to arrest Schwartz then and there without warrant, because he was then and there committing a misdemeanor. If the deputy directed him to come in, and no one ought to be permitted to question it, in the state of the record, it was manifestly an authorized act, and even if the plaintiffs in error gave a like direction the unauthorized act must be held to have merged in the authorized act, and to have been accordingly ineffective to constitute an imprisonment by the accused.

Grebe v. State.

The unauthorized command to the same end as the authorized command which has to be obeyed, and is obeyed, cannot by any sound reasoning operate as an unlawful restraint.

We are constrained also to hold that, because the complaining witness was unquestionably found in the commission of a misdemeanor, and because the direction to appear resulted in his conviction therefor upon his own plea of guilty, and because such direction, whether given by the plaintiffs in error or not, was in the presence of the deputy sheriff of the county and while the latter was an eye-witness to said misdemeanor, there was no false imprisonment involved in what transpired.

"False imprisonment is the unlawful restraint of a person without his consent either with or without process of law." *Johnson v. Bouton,* 35 Neb. 898. In the case of *Harness v. Steele,* 159 Ind. 286, which is much relied upon by the state, a boy of 14 was charged with larceny. The sheriff told him to get his hat and go with him, and took him past the county jail, telling him that unless he confessed he would have to lock him up in said jail. And thereafter, upon profession of innocence by the boy, he told him to go home and to remain there until he came for him. Under that state of facts it was held by the Indiana court that there was an arrest and an imprisonment. This, however, was a taking into custody, a detention in the hands of the officer, a compulsion to attend upon the sheriff, and a requirement to remain at a place certain. This was actual physical restraint, and differs very greatly from what occurred in the case at bar. There was no threat employed in this case, no requirement that the complaining witness accompany plaintiffs in error, no commitment to any particular place, nothing to put in fear. There was no false imprisonment in this. It was so held in *Lawson v. Buzines,* 3 Del. 416; *Hill v. Taylor,* 50 Mich. 549; *Emery v. Chesley,* 18 N. H. 198; *Williams v. State,* 53 Tex. Cr. Rep. 2.

The fourth count was for assault. While there is little to support the charge that plaintiff in error Holmes drew

a revolver upon the complaining witness and told him that he would shoot, and that plaintiff in error Grebe participated in the act, there is sufficient in the evidence to sustain the finding of the jury. We are unable to disturb that finding. Indeed, the plaintiffs in error fail to raise any considerable question as to it. We have examined the argument and authorities of their brief, and their assignment of error on this point cannot be entertained.

It follows from what has been said that the district court was wrong in submitting the case upon the first three counts set forth in the information, and that the verdict and the judgment against the plaintiffs in error upon these three counts must be reversed. It is equally clear that the conviction upon the fourth count of the information was without reversible error, and that the same must be sustained. The judgment is therefore reversed, and the cause dismissed, in so far as counts one, two, and three of the information are concerned; and it is affirmed as to the conviction of plaintiffs in error on the fourth count of said information.

AFFIRMED IN PART, AND REVERSED IN PART.