## HAWTHORNE et al. v. AUSTIN ORGAN CO.

### No. 3599.

Circuit Court of Appeals, Fourth Circuit.

June 25, 1934.

PARKER, Circuit Judge, dissenting.

Murray M. McGuire, of Richmond, Va., and John S. Battle, of Charlottesville, Va. (Robert E. Taylor, of Charlottesville, Va., on the brief), for appellants.

H. W. Walsh, of Charlottesville, Va. (W. Eskridge Duke and Lyttelton Waddell, both of Charlottesville, Va., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and WEBB, District Judge.

SOPER, Circuit Judge.

This action in assumpsit was instituted on June 22, 1932, in the District Court by Austin Organ Company, a Maine corporation, as plaintiff, against H. K. Hawthorne, M. L. Rea, and R. Merritte Robinson, citizens of Virginia, to recover the sum of $12,870, with interest. The suit was based on five promissory notes payable to the plaintiff; one of April 10, 1930, for $2,700, payable six months after date, with an attorney's fee of 10 per cent. for collection if not paid at maturity, and four notes of December 10, 1929, for $2,475 each, payable at intervals of one, two, three, and four years, respectively. The notes were signed by the three defendants as "Trustees High Street Baptist Church." The defense pleaded was that the notes were not the individual personal obligations of the defendants, but were the obligations of the congregation of the church, executed upon its authority by the defendants, as its agents, in evidence of the purchase price of an organ, pursuant to a contract under which the plaintiff agreed to sell and deliver the organ to the congregation; and that the notes were accepted by the plaintiff, not as the obligations of the defendants, but as the obligations of the congregation.

At the trial of the case, the plaintiff proved the notes and rested. The defendants thereupon offered in evidence a contract of February 1, 1929, between the Organ Company, as party of the first part, and High

Street Baptist Church, as party of the second part, signed by a representative of the Organ Company and by the three defendants, as trustees of the church. The contract provided that the Organ Company should construct, erect, and sell to the church, a pipe organ, according to certain specifications, and that upon the acceptance of the organ the church should pay therefor the sum of $12,-900 as follows: $3,000, in cash, and the balance in four notes of $2,475 each, payable at yearly intervals, with interest at 6 per cent. It was further provided that in the event of default in the payment of any note given for the balance of the purchase price, all of the sums represented by the notes should become due and payable. The contract was approved by the congregation at a meeting held on February 1, 1929, at which the report of a music committee recommending the purchase of the organ on the terms expressed was adopted, and the trustees of the church were authorized and requested to sign the contract.

The organ was installed and accepted by the church on August 11, 1929. The cash payment of $3,000, however, was not made, and after certain negotiations the Organ Company accepted in lieu thereof $100 in cash and a four months' note of December 10, 1929, for $2,900. On the same date the remaining four notes in suit were executed and delivered for the balance of the purchase price. The execution of the notes by the trustees was authorized at a meeting of the congregation on December 6, 1929, at which a motion requesting the trustees to sign the notes was adopted. The sum of $200 was subsequently paid on the note of $2,900, and on April 10, 1930, a renewal note for six months for $2,700 was given in its place.

The plaintiff objected to the introduction of the contract in evidence on the ground that it had been finally merged in the notes, which became the obligations for payment upon which the defendants were bound. It seems to be true that the notes were accepted as payment for the organ, but the evidence referred to above was relevant to the defense, and the default provision of the contract was necessary to justify an action upon the last two notes prior to their maturity.

At the conclusion of the evidence in the court below, a motion of the plaintiff for a directed verdict in its favor was granted, and this action is assigned as error in this appeal. The District Judge was of the opinion that the defendants were individually liable on the notes by reason of the established principle that a trustee is subject to personal liability upon a contract made by him in the course of the administration of the trust, unless, by the contract, it is provided that he shall not be personally liable. The rule is so stated in Tentative Draft No. 4, Restatement of Trusts of the American Law Institute, §§ 253, 254, and 255, and the authorities support the statement. Taylor v. Davis, 110 U. S. 330, 4 S. Ct. 147, 28 L. Ed. 163; Petition of Eddy (C. C. A.) 6 F.(2d) 196-198; Allegheny Tank Car Co. v. Culbertson (D. C.) 288 F. 406; Hussey v. Arnold, 185 Mass. 202, 70 N. E. 87; Philip Carey Co. v. Pingree (1916) 223 Mass. 352, 111 N. E. 857; Equitable Trust Co. v. Taylor (1928) 330 Ill. 42, 161 N. E. 62, 64; Feldman v. Preston (1916) 194 Mich. 352, 160 N. W. 655; Truesdale v. Phila. Trust Co. (1895) 63 Minn. 49, 65 N. W. 133; Stanton Nat. Bank v. Swallow (1925) 113 Neb. 336, 203 N. W. 561; Riedell v. Stuart (1931) 151 Okl. 266, 2 P.(2d) 929, 76 A. L. R. 1469; Catlett v. Hawthorne, 157 Va. 372, 161 S. E. 47. Compare Boyle v. Rider, 136 Md. 286, 110 A. 524, where it was held that the intent of the parties not to hold a trustee personally liable upon a contract need not necessarily be shown in the contract itself, but may be evidenced by circumstances known to the parties at the time the contract was executed.

■ The general rule, however, has been modified, so far as negotiable instruments are concerned, by section 20 of the Negotiable Instruments Law, codified in section 5532 of the Virginia Code, which provides as follows: "Where the instrument contains, or a person adds to his signature, words indicating that he signs for or on behalf of a principal or in a representative capacity, he is not liable on the instrument if he was duly authorized; but the mere addition of words describing him as an agent, or as filling a representative character, without disclosing his principal, does not exempt him from personal liability."

It is said in the Tentative Draft of the Restatement of Trusts, § 255, page 153, that this statute is applicable to a trustee who signs a negotiable instrument in such a manner as to manifest an intention to be liable not in his personal capacity, but only as trustee. The authorities likewise support this statement of the rule. Thus in New Georgia Nat. Bank v. Lippmann, 249 N. Y. 307, 310, 164 N. E. 108, 109, 60 A. L. R. 1344, the court was construing the liability of a person who signed an instrument containing words indicating that he was signing in a representative capacity, when in fact he signed without authority. In holding that in such circumstances the signer was liable on the instrument, the court, through Cardozo, C. J., discussed the purpose of section 20, as follows:

"Before the statute was adopted, all manner of subtle distinctions had to be drawn before one could say where liability would rest. Brannon [Negotiable Instruments Law (4th Ed.)], supra; Mechem, Agency, vol. 1, §§ 1122, 1123. Many forms of signature indicating an intention to sign as agent for a designated principal were held to charge the agent personally. The hardship was mitigated by resort to extrinsic evidence when the controversy was one between the original parties to the paper, but not when the paper was in the hands of a holder in due course. Thus, a note bearing the name of a corporation in the margin, but signed by the president and treasurer in their own names with the addition of their official titles, and thereafter discounted by a bank without notice dehors the instrument, was in law their individual promise. Casco Nat. Bank v. Clark, 139 N. Y. 307, 34 N. E. 908, 36 Am. St. Rep. 705; Merchants' Nat. Bank v. Clark, 139 N. Y. 314, 34 N. E. 910, 36 Am. St. Rep. 710; First Nat. Bank v. Wallis, 150 N. Y. 455, 44 N. E. 1038. Many decisions to the like effect are collated in the text-books, see, e. g., Brannon's Negot. Instr. Law (4th Ed.) by Prof. Chafee, note to section 20, Mechem, supra. Slight variations of form led to variant conclusions. See, e. g., Barker v. Mechanic Fire Ins. Co., 3 Wend. [N. Y.] 94, 20 Am. Dec. 664; Miller v. Roach, 150 Mass. 140, 22 N. E. 634, 6 L. R. A. 71; Mechem, § 1124. The refinement of distinction was mystifying even to the courts. It must have been more mystifying to business men in the quick transactions of the market.

"The statute, as we read it, sweeps these subtleties away. Whenever the form of the paper is such as fairly to indicate to the eye of common sense that the maker signs as agent or in a representative capacity, he is relieved of personal liability if duly authorized. Jump v. Sparling, 218 Mass. 324, 326, 105 N. E. 878; Consumers' Twine Co. v. Mount Pleasant Co., 196 Iowa, 64, 194 N. W. 290; Austin, Nichols & Co. v. Gross, 98 Conn. 782, 120 A. 596."

See, also, American Trust Co. v. Canevin (C. C. A.) 184 F. 657; Gutelius v. Stanbon (D. C.) 39 F.(2d) 621; First Nat. Bank of Pennsboro v. Delancey, 109 W. Va. 136, 153 S. E. 908; Wilson v. Clinton, etc., Church, 138 Tenn. 398, 198 S. W. 244; Adams v. Swig, 234 Mass. 584, 125 S. E. 857; Bank of Spruce Pines v. Vance, 205 N. C. 103, 170 S. E. 119; Megowan v. Peterson, 173 N. Y. 1, 65 N. E. 738; Charles Nelson Co. v. Morton, 106 Cal. App. 144, 288 P. 845; Grafton Nat. Bank v. Wing, 172 Mass. 513, 52 N. E.

1067, 43 L. R. A. 831, 70 Am. St. Rep. 303; Bowen v. Farley, 256 Mass. 19, 152 N. E. 69; Kerby v. Ruegamer, 107 App. Div. 491, 95 N. Y. S. 408; Wolff v. Flateau, 206 App. Div. 134, 200 N. Y. S. 646; Orgill Bros. v. Perry, 157 Miss. 543, 128 So. 755; Conner v. Clark, 12 Cal. 168, 73 Am. Dec. 529; Hall v. Jameson, 151 Cal. 606, 91 P. 518, 12 L. R. A. (N. S.) 1190, 121 Am. St. Rep. 137; True W. Jones Brewing Co. v. Flaherty, 80 N. H. 571, 120 A. 432. We have been referred to no Virginia cases in which it is held that section 20 is applicable to trustees signing a contract as such, but it seems certain that the Virginia court regards with favor the rule established by the above-cited authorities, for there are numerous dicta to that effect in the opinion of Coal River Collieries v. Eureka C. & W. Co., 144 Va. 263, 132 S. E. 337, 339, 46 A. L. R. 485.

It will be noticed that a trustee is excused from personal liability only if he is duly authorized to sign the instrument, in a representative capacity. Relying on this proviso, the plaintiff contends that no authority was given to the defendants by the church to sign the notes in suit on its behalf. Reference is made to the resolution passed by the congregation of February 1, 1929, wherein the report of the music committee was adopted, and the trustees of the church were authorized and requested to sign the contract for the purchase of the organ; and also to the resolution passed at the meeting of December 6, 1929, wherein the trustees were requested to sign the notes. The contention is that these resolutions did not empower the trustees to sign on behalf of the congregation, but merely to sign the contract themselves. The position is not tenable. The contract which the trustees were authorized and requested to sign was expressly entered into between the Organ Company, as party of the first part, and the church, as party of the second part, and it would be a perversion of the reasonable meaning of the resolutions to hold that the congregation did not authorize the trustees to sign the notes on its behalf, but merely on their account.

The plaintiff goes further and contends that the church had no power under the Virginia statutes to authorize the trustees to sign a contract on its behalf which might become a charge upon the property held by the trustees for the uses of a religious congregation. Reference is made to sections 45 and 46 of the Virginia Code, in which it is provided that whenever any religious congregation shall deem that their interests will be

promoted by a sale of their land or by a mortgage thereof or deed of trust thereon, any member of the congregation may prosecute a suit in the circuit court of the county where the land lies against the trustees in whom the legal title is, and the court may, if the congregation has given its assent and the court be of the opinion that the rights of others will not be violated, order that the desired action be taken. The trustees themselves may file such petition, and the court, upon evidence that the action is the wish of the congregation, may pass the desired order. The contention is that no action may be taken by the congregation or the trustees which may incumber the lands or property of the church unless proceedings are instituted in conformity with these statutes.

The answer to this argument is found in the decision of Cain v. Rea, 159 Va. 446, 166 S. E. 478, 480, which was a suit instituted by an architect against the same trustees involved in the pending case to enforce a mechanic's lien on the property of the same church, for compensation for labor performed in connection with the erection of the church building under a contract between the architect and the church, which was authorized by the congregation and signed by the trustees. The main question in the case was whether under the Virginia Mechanic's Lien Law, section 6426 of the Virginia Code, a mechanic's lien attaches to church property held by trustees. The sole defense to the suit was that the Legislature had provided only two methods under sections 45 and 46 by which church property might be incumbered; and since neither had been followed in the transaction between the architect and the church, he could not enforce his mechanic's lien. The court said: "We are unwilling to concur in the contention that sections 45 and 46 prohibit a church congregation from making any contract which will affect the church property, except in the particulars enumerated in the statutes. The sections in question provide a convenient method for the sale or mortgaging of church property. They are barriers over which neither trustees nor individual members can step in order to destroy the corpus. They do not prohibit a church, in a congregational meeting, duly called in conformity with the rules of the church, from entering into a contract with a laborer or materialman to perform labor or furnish material."

The court, in reaching this conclusion, relied largely on the decision in Linn v. Carson's Adm'r, 32 Grat. (73 Va.) 170, wherein a church trustee filed a bill in equity to collect an amount which he had advanced for the erection of a church building; and it was held that the transaction between him and the church amounted to a contract which could be enforced against the church property in that case. There the court said: "The Methodist Episcopal church at Winchester, though not a corporation, and incapable of incorporation under the constitution of the state, was an association of individuals, recognized by the constitution as a body capable of taking and holding land, under such limitations as might be prescribed by law, and entitled to be secured in the enjoyment of its property."

In Cain v. Rea, the court expressly disapproved a statement in its prior decision in Forsberg v. Zehm, 150 Va. 756, 143 S. E. 284, 61 A. L. R. 232, to the effect that in Virginia a church or its congregation cannot contract except by reason of a specially held meeting and through a special committee appointed by the members attending the meeting. In that case the board of stewards of a church was held personally liable on a contract in the name of the church, on the ground that the church eo nomine was not a legal entity, was not competent to sue or be sued, and could not be a party to a contract. The final conclusion in Cain v. Rea was, that since the church had authorized the contract of employment, the architect's lien for services rendered was enforceable against the church property.

This decision seems to us conclusive upon the point under discussion; for if the congregation of a church has the capacity to contract, it must possess legal personality, and the inherent power to authorize other persons to enter into a contract on its behalf. The full significance of the decision appears when it is noted that it followed closely upon the decision in Catlett v. Hawthorne, 157 Va. 372, 161 S. E. 47, wherein the defendants in the pending case were held personally liable upon a note signed by them as trustees which had been given in payment of lighting fixtures for the church. They had secured a ruling in prior litigation that the church had not authorized the execution of the note in accordance with law, and it was held that they were therefore estopped, when sued personally, from contending that the payee was to look for payment to the congregation. It is also significant that the court's attention was called to the provision of section 59 of the Constitution of Virginia, that the General Assembly shall not grant a charter of incorporation to any church or religious denomination, and to expressions in earlier cases such as Forsberg v. Zehm, 150 Va. 756, 143 S. E.

284, 61 A. L. R. 232, indicating that a church in Virginia is not a legal entity. See, also, Feuchtenberger v. Williamson, 137 Va. 578, 120 S. E. 257, which holds that under the Mechanic's Lien Statute, sections 6426 and 6436, only the interest of the contracting party in the land is subject to the lien.

It is true that the provisions of section 20 of the Negotiable Instruments Law suggest that ordinarily the authority of the maker of the instrument to sign in a representative capacity must proceed from some person against whom liability upon the instrument may be asserted. Compare Charles Nelson Co. v. Morton, 106 Cal. App. 144, 288 P. 845. It seems clear, however, from the decision in Cain v. Rea, that the congregation in the pending case was not so devoid of legal personality that no liability could be fixed upon it. Such a body is not only capable of taking and holding property, but it can make a contract which may give rise to a lien upon its property. Moreover, under the statute law of Virginia, a church organization is liable to suit. Section 42 of the Code of Virginia enables trustees of a church, in their own names, to sue for and recover real and personal property held by them in trust, or to sue for damages for injury thereto; and also permits them to be sued in relation to the same. The scope of this section seems to be limited to suits attacking the property or the legal title vested in the trustees. Globe Furniture Co. v. Jerusalem Church, 103 Va. 559, 49 S. E. 657. There is, however, a broader statute in section 6058 of the Virginia Code which provides for suits by and against unincorporated associations generally, and declares that they may sue or be sued under their common name, and that judgments and execution against them shall bind their real and personal property in like manner as if they were incorporated. There appear to have been no decisions of the state courts as to the applicability of this statute to a church, but the language is sweeping and broad enough to include such a group. So it now appears that the property which a church owns may be made liable for the debts which it incurs under its power to make a contract. It follows that section 20 of the Negotiable Instruments Law may be applied to a negotiable instrument executed on behalf of a church in Virginia, so as to give effect to the obvious purpose of the section to save from personal liability a person who signs a negotiable instrument in a representative capacity, when he is authorized to do so by one subject to the liability.

The effect of the decision of the Supreme Court of Appeals of Virginia, as we understand it, is in accord with the tendency of modern decisions to acknowledge the fact that associations of men, united in a common purpose, are endowed with personality which, for some purposes at least, the courts may recognize. It is insisted in some quarters that in the absence of legislative authority it is not proper for the courts in any case to view an association as a legal unit or juristic person, while other writers, without ignoring the traditional view, suggest that the line between bodies corporate and unincorporate is so indefinite in the decisions and statutes of to-day that a sharp distinction cannot always be made. Compare Warren, Corporate Advantages without Incorporation (1929) and Dodd on Dogma and Practice in the Law of Associations, 42 Harvard Law Review, 977, June, 1929; Sturges, Unincorporated Associations as Parties to Actions, 33 Yale Law Journal, 924. The more liberal view is not without support in the decisions of the courts. In the well-known case of United Mine Workers v. Coronado Coal Co., 259 U. S. 344, 42 S. Ct. 570, 66 L. Ed. 975, 27 A. L. R. 762, the Supreme Court held that unincorporated labor unions are suable in the federal courts for torts, and that their funds are subject to execution. Reference was made in the opinion (page 385 of 259 U. S., 42 S. Ct. 570, 574), to "affirmative legal recognition of their existence and usefulness and provisions for their protection," embodied in statutory provisions passed by Congress and by the Legislatures of many states, and also to the influence upon the law side of litigation of the equity procedure by which the representation by one person of many in a suit is permitted with the result that the suable character of such an organization has been recognized without dispute in many jurisdictions. The court said (pages 390, 391 of 259 U. S., 42 S. Ct. 570, 576): "Though such a conclusion as to the suability of trades unions is of primary importance in the working out of justice and in protecting individuals and society from possibility of oppression and injury in their lawful rights from the existence of such powerful entities as trade unions, it is after all in essence and principle merely a procedural matter. As a matter of substantive law, all the members of the union engaged in a combination doing unlawful injury are liable to suit and recovery, and the only question is whether when they have voluntarily, and for the purpose of acquiring concentrated strength and the faculty of quick unit action and elasticity, created a self-acting body with

great funds to accomplish their purpose, they may not be sued as this body, and the funds they have accumulated may not be made to satisfy claims for injuries unlawfully caused in carrying out their united purpose."

We do not think that it can be said that the opinion was in strict accord with the traditional rule that a voluntary association may not be treated as a legal unit; for on the contrary there was the recognition of the fact that such an organization may be an entity or self-acting body, capable of possessing funds and subject as such to suit in the courts. It seems to us rather that the opinion represented an advance or natural development in the law by which the ancient rule was brought into conformity with modern needs that in various ways had been formally recognized in the litigation and statutes of the country.

In other connections, the Supreme Court has treated unincorporated aggregations as legal entities subject to liabilities. In Burk-Waggoner Association v. Hopkins, 269 U. S. 110, 46 S. Ct. 48, 70 L. Ed. 183, it held that an unincorporated joint stock association, although a partnership under the state law, was a corporation within the definition of the Revenue Act of 1918 (40 Stat. 1057) and subject to the income taxes imposed by that act, and therefore overruled the contention of the association that what was called its property and income was in law the property and income of its members which could be taxed only after apportionment to the owners thereof. In Hemphill v. Orloff, 277 U. S. 537, 48 S. Ct. 577, 579, 72 L. Ed. 978, it was held that a business association known as a "Massachusetts Trust," which was unincorporated but had some of the attributes of a corporation under the state law, could not claim for itself the privileges and immunities granted to associates as individual citizens by article 4, § 2, of the Federal Constitution. Discussing the matter, the court said: "Whether a given association is called a corporation, partnership, or trust, is not the essential factor in determining the powers of a state concerning it. The real nature of the organization must be considered. If clothed with the ordinary functions and attributes of a corporation, it is subject to similar treatment."

It is obvious that in this decision the actuality of the situation rather than the technical distinction between incorporated bodies and voluntary associations was the controlling consideration.

Conversely, cases dealing with incorporated bodies are not wanting in which the corporate fiction has been ignored so that the situation might be treated realistically and justice might be done. The Supreme Court itself on occasion has disregarded the fiction in tax cases in order to avoid injustice to the taxpayer or to the United States, as in Southern Pacific Co. v. Lowe, 247 U. S. 330, 38 S. Ct. 540, 62 L. Ed. 1142; Weiss v. Stearn, 265 U. S. 242, 44 S. Ct. 490, 68 L. Ed. 1001, 33 A. L. R. 520; U. S. v. Phellis, 257 U. S. 156, 42 S. Ct. 63, 66 L. Ed. 180. See, also, Industrial Cotton Mills v. Commissioner (C. C. A.) 61 F.(2d) 291; Western Md. Ry. Co. v. Commissioner (C. C. A.) 33 F.(2d) 695. Compare New Colonial Ice Co. v. Helvering, 54 S. Ct. 788, 78 L. Ed. 1348, decided May 28, 1934.

Modern legislation itself, reflecting the demands of the times, tends to obliterate the distinction. On the one hand, we find statutes like that codified in section 6058 of the Virginia Code, which permits an unincorporated association to sue and be sued under its common name, and provides that judgments and executions against it shall bind its real and personal property in like manner as if it were incorporated. These provisions may be viewed as merely procedural; see Warren, Corporate Advantages without Incorporation (1929), Ch. 6; but they are none the less a recognition of the fact that an aggregation of men, which performs acts, incurs liabilities, and owns property as a body, has in fact a personality which cannot be completely ignored by the law without introducing confusion and injustice in practical affairs. On the other hand, there are the liberal permissive laws of the several states which make possible the formation of a corporation by any group of individuals who see fit to take advantage of the opportunity. The liberality of these statutes emphasizes the unreality of the distinction between the two classes of aggregations, and the result is that the courts are led more and more to recognize the factual similarity between them. The Supreme Court of Appeals of Virginia was doubtless influenced by these considerations when it spoke in Linn v. Carson, supra, of a church as "an association of individuals, recognized * * * as a body capable of taking and holding land."

The plaintiff further contends, irrespective of the liability of the defendants on the notes as trustees, that they are personally liable as members of an unincorporated body, who participated in the making of the contract, and are in effect the principals on whose behalf the notes were executed. The general rule at common law is invoked that a voluntary association, not for profit, such as an unincorporated church or club, is not liable as

such on its contracts because it has no independent legal status, but the members thereof, who authorize or ratify the contract, are liable thereon upon general principles of agency. Thus it is said in Catlett v. Hawthorne, 157 Va. 372, 377, 161 S. E. 47, that members of an unincorporated church organization, who are actually instrumental in incurring liabilities for it, or authorize or ratify its transactions, are personally liable therefor. See the authorities collected in Vader v. Ballou, 151 Wis. 577, 139 N. W. 413, 7 A. L. R. 216, 218, 222; Cousin v. Taylor, 115 Or. 472, 239 P. 96, 41 A. L. R. 750, 754; Jardine v. Superior Court in and for Los Angeles County, 213 Cal. 301, 2 P.(2d) 756, 79 A. L. R. 291; Sweetman v. Barrows, 263 Mass. 349, 161 N. E. 272, 62 A. L. R. 311.

It is by no means clear that under the Virginia law the liabilities of members of the congregation of a church upon contracts made in its name are as broad as the liabilities of members of the ordinary unincorporated association, which has no existence at all in law. But if we assume that not only the church, but also its members, are liable upon its contracts, we must still bear in mind that in the pending case the contracts in suit are promissory notes governed by the Negotiable Instruments Law. Section 18 of the statute (Va. Code, § 5580) provides: "No person is liable on the instrument whose signature does not appear thereon except as herein otherwise expressly provided. But one who signs in a trade or assumed name will be liable to the same extent as if he had signed in his own name."

The rule enunciated in this section is declaratory of the common law (Daniel on Negotiable Instruments (6th Ed.) § 303; Cragin v. Lovell, 109 U. S. 194, 198, 3 S. Ct. 132, 27 L. Ed. 903; Texas L. & C. Co. v. Carroll & Iler, 63 Tex. 48, 51; Frailing v. Sieber, 168 Wis. 259, 169 N. W. 607), and no principal whose name is not disclosed upon the face of the instrument may be held liable upon it. Marks v. Kindel (C. C. A.) 41 F.(2d) 584; Frailing v. Sieber, 168 Wis. 259, 169 N. W. 607; Mineral Belt Bank v. Elking Lead & Zinc Co., 173 Mo. App. 634, 158 S. W. 1066. It has been held that a note signed in a partnership name binds all the partners, under the second sentence of the section (Frazier v. Cottrell, 82 Or. 614, 162 P. 834; Patrick v. Wood & Sons, 162 Ga. 137, 133 S. E. 870), although a note signed by a partner individually for a partnership debt is not binding upon the partners who did not sign (Marks v. Kindel, supra). But the name of a church, capable of contracting as a legal entity, when signed to a note with its authority, can hardly be viewed as the trade or assumed name of its members. The exception was designed to prevent the escape from liability of one who, instead of his own name, has used upon the instrument an artificial name to indicate the person to be bound; and the use of a group name, which describes a juristic person capable of making a contract, was not in contemplation. Moreover, the exception does not appear to be relevant to a negotiable instrument in the name of a voluntary group, not organized for profit, which has no existence as a legal entity, for if such a name should be considered as the trade or assumed name of the members of the group, it would necessarily stand for and bind all the members, and the established rule, that only participating members of such an organization are bound by acts done in its name, would be violated. On the other hand, if liability is confined to participating members only, there is conflict with the main purpose of the section to specify with definiteness the persons liable upon an instrument, and to confine that liability to those whose identity is disclosed or indicated thereby.

The mere fact that the defendants signed the notes in a representative capacity cannot give countenance to a suit to hold them as principals upon the basis of their membership in the church. It is not necessary under the Virginia statutes that a trustee appointed by the court to take title to the property of a church be a member of its congregation (see Virginia Code, § 39); so that it may not be inferred from the appearance of the names of the defendants in the notes that they were members of the church. They did not sign as members, and their signatures as trustees imported no personal undertaking under section 20 of the Negotiable Instruments Law, and did not make them parties in their individual capacity to the instrument. To hold them personally liable because of the extraneous fact that they were members of the congregation, would be to impose a liability upon persons not disclosed upon the face of the instrument at all. None of the cases cited by the plaintiff involve the precise situation here presented, for the association, in whose behalf the contract was therein made, was not regarded as an entity which could be bound. Only three of the cases (Evans v. Lilly, 95 Miss. 58, 48 So. 612, 21 Ann. Cas. 1087; Chick v. Trevett, 20 Me. 462, 37 Am. Dec. 68; Catlett v. Hawthorne, 157 Va. 372, 377, 161 S. E. 47), involve suits upon promissory notes. In the first two, the signatures of the parties were not regarded as indicating a rep-

resentative capacity alone, and in the third, no mention was made of the Negotiable Instruments Law and the defendants were estopped to show their authority to bind the principal named.

The judgment of the District Court is reversed.

PARKER, Circuit Judge (dissenting).

The congregation of the High Street Baptist Church was not a corporation. It had never been incorporated, and the Constitution of Virginia forbade its incorporation. The notes executed by the defendants as trustees for the congregation were therefore contracts executed in behalf of an unincorporated religious association. They were binding upon such members of the association as authorized their execution, and certainly upon the defendants, whose assent was evidenced by the fact that they themselves executed the notes. Catlett v. Hawthorne, 157 Va. 372, 161 S. E. 47; Clark v. O'Rourke, 111 Mich. 108, 69 N. W. 147, 66 Am. St. Rep. 389; Medlin v. Ebenezer Methodist Church, 132 S. C. 498, 129 S. E. 830, 831; Williston on Contracts, vol. 1, p. 586, § 309; 23 R. C. L. 432; 5 C. J. 1351; 54 C. J. 31; notes 7 A. L. R. 222, 41 A. L. R. 754, and cases there cited.

And there is nothing in section 5580 of the Virginia Code which relieves defendants of this liability. Their signatures appear upon the notes, as does also the name of the unincorporated association for which they were acting as trustees and in whose behalf the notes were executed. The designation of the signers of the notes as trustees of the congregation cannot be used to relieve defendants from liability on the ground that it discloses that they were acting as agents for a disclosed principal and at the same time be ignored as disclosing the principal for which they were acting.

And I cannot see that the liability of defendants is in anywise affected by section 6058 of the Virginia Code, permitting suits against unincorporated associations. As said by the late Judge Cothran in Medlin v. Ebenezer Methodist Church, supra, in dealing with a similar statute, "an unincorporated association is in no sense a legal entity and is not made so by the statute. * * * The liability of the members is joint and several. 5 C. J. 1362. Any individual member may therefore be sued without proceeding under the statute against the association."

Nor is the liability of members of an unincorporated association affected by the decision of the Supreme Court of Appeals of Virginia in Cain v. Rea, 159 Va. 446, 166 S. E. 478. The effect of that decision was merely to sustain a mechanic's lien under the Virginia statute where improvements were made on church property under a contract authorized by the congregation. Nothing is said in the case which militates against the well-settled rule that the members of an unincorporated association who give their assent to contracts entered into in its behalf are personally liable thereon.