FRANK FECHTELER & others *vs.* JOHN Q. A. WHITTEMORE & another.

Middlesex.      November 9, 1909. — February 23, 1910.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Contract*, Construction, Performance and breach. *Sale*, Delivery. *Practice, Civil*, Exceptions, Judge's charge. *Words*, " Satisfactorily."

A manufacturer and dealer in shoe polishes, who maintained boot blacking stands with signs upon them in various parts of the country, after negotiations with a dealer in cards called " transfer signs," letters from which could be used in substitution for painted letters on signs for advertising, the negotiations relating in part to the question whether the transfer signs would stand exposure to all kinds of weather, gave to the dealer in cards an order by letter for four thousand sets, the letter stating, " It is understood and agreed that you are to send us not more than twenty-four sets as soon as ready, and after a thorough trial we find that they do not work satisfactorily this order is to be cancelled." Fourteen sets of cards were shipped at once, and other shipments were made amounting to four thousand sets, all billed as of a year after the fourteen sets were sent. The purchaser refused to accept the shipments. *Held*, that under the circumstances the term " satisfactorily " meant "satisfactorily to a reasonable man "; and that, if there had been a reasonable opportunity to test the cards and if the purchaser as a reasonable man acting in good faith should have accepted them, then he should pay for them.

If at the time of a sale no agreement is made to the contrary, it is sufficient if the goods sold are ready at the vendor's place of business at the appointed time, and therefore at the trial of an action upon an account annexed for goods shipped to the defendant in response to an order in writing which read, " You can enter our order for " goods, part " to be sent when ready," and the rest " six months after

the first shipment," a charge to the jury, that "ordinarily, unless there is some agreement to the contrary, a delivery to a common carrier is a delivery to the purchaser," was not strictly accurate. Exceptions thereto by the defendant here were not sustained however, because the instruction did the defendant no harm, since, the order stipulating that the plaintiff should ship the goods to the defendant, a delivery to the carrier was tantamount to a delivery to the defendant.

If the conditions of a certain sale are that the purchaser is to have ample opportunity to test the goods and that he may refuse them and cancel the order in case after an adequate test they are not satisfactory to him as a reasonable man acting in good faith, a premature delivery of the goods by the vendor to the purchaser cannot operate to the prejudice of the vendor if, after having had an adequate opportunity to make such a test, the purchaser, if he had acted in good faith and as a reasonable man, should have been satisfied with the goods.

At the trial of an action for the price of certain goods alleged to have been sold to the defendant by the plaintiff, the conditions of the sale being that the defendant was to have ample opportunity to test the goods and that he might refuse them and cancel the order in case after an adequate test they were not satisfactory to him as a reasonable man acting in good faith, the defendant asked the presiding judge to rule that the burden was on the plaintiff to show that certain samples sent worked satisfactorily after a thorough trial, or that the defendant waived the condition of the contract. The presiding judge refused to rule as requested, but, while in his charge to the jury he did not in terms say anything about the burden of proof, the jury must have understood from the language of the charge that the plaintiff could not recover unless he showed that the defendant had had sufficient time to test and examine the goods and that he ought to have been satisfied with them as a reasonable man. *Held,* that the defendant was not harmed by the refusal of his request.

CONTRACT upon an account annexed for the price of cards called "transfer signs," letters from which could be used in substitution for painted letters on signs for advertising. Writ dated July 27, 1906.

The case was tried before *Stevens,* J. There was evidence tending to show that the defendants were engaged in the manufacture and sale of shoe polishes and furnished boot blacking stands which were placed in charge of bootblacks in various parts of the country; that one Smith, an agent of the plaintiffs, solicited an order from the defendants, for the transfer signs, that the question whether the signs would stand exposure to all kinds of weather was discussed between Smith and one Pessels, the defendants' purchasing agent, Smith asserting that the signs would do so, and that finally the following letter was written to the plaintiffs by the defendants' purchasing agent:

"Cambridge, A. Mass., U. S. A., March 29, 1904. Messrs. Palm, Fechteler & Co., New York, N. Y. — Gentlemen: You

can enter our order for 4000 sets at 20¢ a set 2000 to be sent when ready, 2000 six months after the first shipment. It is understood and agreed that you are to send us not more than 25 sets as soon as ready, and after a thorough trial we find that they do not work satisfactorily, this order is to be cancelled without cost to Whittemore Bros. & Co. Yours truly, Whittemore Bros. & Co. Pessels."

Fourteen sets of cards were then sent to the defendants by the plaintiffs and on August 23, 1904, were put upon some of the defendants' stands by Smith. Two thousand and seventy-six sets of the cards were sent to the defendants on August 24, 1904, which the defendants refused to receive, contending that the cards had not received the test stipulated for in the letter of March 29, and the defendants informed the plaintiffs by letter that "your shipment of August 24 will be left at the depot . . . at your risk and expense."

After some extended correspondence, the plaintiffs wrote to the defendants on October 1, 1904, a letter containing the following: " We have shipped you these goods in perfect good faith. If, now, you want a trial of six months, we are perfectly willing to give it to you; all that we ask is, that you accept these goods that we have shipped so as to take them from the railroad company — whose notice we send you here. We will date your bill six months ahead, and if at that time you are satisfied with these goods and they are exactly what you contracted for, and as per reading of your contract, we will then expect you to make settlement. If they are not according to contract, you can ship them back to us at that time just as well as the present time. In plain words, we want you to know and feel that we are not trying to do anything, or want to do anything that is not in accordance with our contract, and we trust that you will meet us in the same spirit; you are perfectly good for what you contract for, and we are perfectly good for what we contract for, so that there is no difference on this score, and we look forward to your advices." No further letter being received from the defendants meantime, a further shipment of two thousand cards was made to the defendants on March 31, 1905, which the defendants refused to accept, referring by letter to what they had written to the plaintiffs during the previous year.

At the close of the evidence, the defendants asked for the following rulings:

"1. On all the evidence the plaintiffs are not entitled to recover on their declaration."

"8. Under the terms of the letter of March 29, 1904, the defendants were not called upon to accept a shipment of more than twenty-five sets until after those twenty-five sets had worked satisfactorily after a thorough trial, or that condition had been waived by the defendants."

"16. If two thousand or more sets of transfer signs were shipped addressed to the defendants within a day or two after the defendants were first shown how to apply the signs by the plaintiff's agent, such shipment was not a performance of the defendants' order of March 29, 1904."

"19. A mere delivery of the signs to a railroad company would not be a delivery to the defendants.

"20. A mere delivery of the signs to a railroad company would not be a delivery to the defendants, unless it appeared that the defendants assented to such a delivery as a delivery to them.

"21. There is no evidence that the defendants assented to a delivery of the signs to a railroad company as a delivery to the defendants.

"22. Under the letter of March 29, 1904, the defendants were under no obligation to pay any freight upon the sets.

"23. If the defendants did not agree to pay any part of the cost of carriage, the delivery of the signs to a freight station in Boston or Cambridge will not constitute a delivery to the defendants."

"31. The defendants were under no obligation to accept the second lot of approximately two thousand sets of letters at the time when they were shipped on or about April 1, 1905."

"36. The burden is upon the plaintiffs to show that the twenty-five sets, after a thorough trial, worked satisfactorily, or that the defendants expressly or by their conduct waived the condition that they should work satisfactorily."

The rulings were refused and the judge charged the jury as stated in the opinion. The jury found for the plaintiffs; and the defendants alleged exceptions.

*J. P. Studley*, for the defendants.

*F. P. Garland*, for the plaintiffs, submitted a brief.

MORTON, J.    The contract was partly in writing and partly oral, and it was rightly left to the jury to determine what the contract was and whether it had been performed by the plaintiffs.    The jury were also rightly instructed that the defendants were not bound to accept and pay for the goods until they had had a reasonable opportunity to test and examine them, nor unless they were satisfactory to them, if they acted in good faith and did what they ought reasonably to have done to decide whether the goods were or were not satisfactory.    In other words, the substance of the instructions in regard to the question of satisfactoriness was that the defendants were not bound to accept and pay for the goods unless they were satisfactory, and that they were entitled to sufficient time " whether . . . three, or four, or six months, or a year," to determine whether they were satisfactory, and that it was for the jury to say, taking all of the circumstances into account, whether the defendants had had a reasonable time to test and examine the goods, and, if that were so, then whether as reasonable men acting in good faith towards the plaintiffs the goods should have been accepted as satisfactory, and if they should have been, then the defendants were liable; otherwise not. This was correct and afforded the defendants no just ground for complaint.    *C. W. Hunt Co.* v. *Boston Elevated Railway*, 199 Mass. 220.    *Cashman* v. *Proctor*, 200 Mass. 272.    *Noyes* v. *Commercial Travellers Eastern Accident Association*, 190 Mass. 171, 182. *Lockwood Manuf. Co.* v. *Mason Regulator Co.* 183 Mass. 25. *Lovett* v. *Farnham*, 169 Mass. 1, 5.    *Page* v. *Cook*, 164 Mass. 116.    *Hawkins* v. *Graham*, 149 Mass. 284.    The contract related to an article of merchandise to be used for purely business purposes and assumed that it would be satisfactory if after a proper trial it ought to be, and that the defendants would thereupon accept and pay for it.    It was not intended to be left to the whim or caprice or even altogether to the good faith of the defendants to say whether the goods were satisfactory.    Under the circumstances the term " satisfactorily " must be held to mean " satisfactorily to a reasonable man," and the jury were so instructed.

If nothing is said about delivery it is sufficient if the goods are ready at the vendor's place of business at the appointed time. Benjamin on Sales, (6th ed.) § 682. It was not therefore strictly accurate to say, as the trial judge did, that "ordinarily, unless there is some agreement to the contrary, a delivery to a common carrier is a delivery to the purchaser." That would be true if intended to apply to cases where goods were to be sent by the vendor from one city or State to the vendee in another city or State. But the instruction did the defendants no harm because, according to the order of March 29 the goods were to be shipped to the defendants by the plaintiffs, and, in the absence of any agreement to the contrary, the presumption would be that they were to be so shipped at the defendants' expense. Under such circumstances delivery by the vendor to a common carrier operates, as already observed, as a delivery to the buyer. *Fragano* v. *Long*, 4 B. & C. 219. Benjamin on Sales, (6th ed.) § 693.

The defendants contend that the goods were sent before they should have been. But if the delivery was premature, which we do not intimate, it could not have operated to the prejudice of the defendants since the jury were expressly instructed that the defendants "were under no obligation to finally accept the goods until they had an opportunity to test them and find whether they were satisfactory."

Although nothing was said in so many words about the burden of proof, it is plain, we think, that the jury must have understood from the tenor of the charge that the plaintiffs could not recover unless they showed that the defendants had had sufficient time to test and examine the goods and that they ought to have been satisfied with them as reasonable men. Nothing in the charge implied that the defendants were bound to show that the goods were not satisfactory.

What we have said disposes of the questions raised by the requests for rulings. We think that the charge dealt adequately with the issues presented.

*Exceptions overruled.*