# Richmond.

## C. S. FORSBERG, ET ALS. v. HARRY J. ZEHM.

### May 24, 1928.

1. RELIGIOUS SOCIETIES—*Contracts—Meaning of the Word Church—Case at.
   Bar.*—The instant case was an action by an organist of a church
   against the board of stewards to recover his salary for a year, based.
   upon the failure of the board to give three months' notice of the
   termination of the contract, as stipulated in the contract.   Defend-
   ants contended that plaintiff contracted with a known principal,
   "Ghent Methodist Episcopal Church South," named in the instru--
   ment, and therefore the stewards were not liable to suit and no one·
   was so liable except the disclosed principal.

   *Held:* That the word church in this connection meant the collected
   membership of persons constituting the congregation of a single
   permanent place of worship and that the contract was made on the·
   behalf of the board of stewards as the real principal and that they·
   were liable.

2. WORDS AND PHRASES—*Church.*—The word "church" is used with
   varied significance, dependent upon the circumstances attending its
   use.   It may refer only to the church building or house of worship;
   it may mean in a more consecrated way the great body of persons
   holding the Christian belief, or in a restricted sense confined to·
   those adhering to one of the several denominations of the Christian.
   faith, at large or in a definite territory; and it may mean the col-
   lective membership of persons constituting the congregation of a
   single permanent place of worship.

3. RELIGIOUS SOCIETIES—*Churches not Incorporated—Trustees.*—In Virginia
   churches are not incorporated and under the policy of our law cannot
   be.   Our statutes provide for the appointment of trustees to hold
   title to the permanent property of the church, and their powers are
   limited by the law authorizing their appointment.

4. RELIGIOUS SOCIETIES—*Board of Stewards—Contracts.*—In the instant
   case, an action by an organist against the board of stewards of a
   church for salary, there was no community of interest for business
   purposes between the members of the church.   The board of stewards·
   ·was from necessity the recognized instrumentality for handling the
   current funds, and, if they saw fit, for making contracts in reference·
   to the use and disbursement of the funds.

5. RELIGIOUS SOCIETIES—*Contracts.*—In Virginia a church or its congregation cannot contract, certainly not unless perhaps by reason of a specially held meeting and through a special committee appointed by the members attending such meeting.

6. RELIGIOUS SOCIETIES—*Contracts—Board of Stewards—Music Committee—Case at Bar.*—In the instant case a music committee of a church elected by the board of stewards entered into a contract with plaintiff to serve as organist for the church. As in Virginia a church or its congregation cannot make a contract, either the members of the music committee alone were liable on the contract with plaintiff or the board of stewards were liable as upon a contract made for them.
   *Held:* That the board of stewards were liable on the contract.

7. RELIGIOUS SOCIETIES—*Contracts—Liability of Trustees—Case at Bar.*—A church cannot make a contract and by its breach create a lien on the church property, but the individual making the contract would be liable, and in the instant case, arising out of a contract with an organist, the trustees should be taken as the actual principal acting through the music committee.

8. SOCIETIES AND CLUBS—*Religious Societies—Person Assuming to Act for a Group of Others Unincorporated.*—A person assuming to act for a group of others unincorporated, such as voluntary societies, unincorporated churches and the like, may have expressly excluded personal responsibility or the person extending the credit may have done so in reliance upon voluntary payments, subscriptions or funds to be raised, but where it does not appear that he has done so, the person who assumes to act will usually be personally responsible.

9. RELIGIOUS SOCIETIES—*Liability of Board of Stewards—Employment of Organist—Case at Bar.*—In the instant case the board of stewards of a church in the usual discharge of their functions caused plaintiff to be employed through the music committee as organist, and he had a right to look to them for a fulfillment of the provisions of the contract, and the members of the board were jointly and severally liable to him.

10. RELIGIOUS SOCIETIES—*Contracts—Employment of Organist—Right to Discontinue the Engagement of the Organist—Satisfactory Performance—Case at Bar.*—In the instant case the stewards of a church, through its music committee, engaged plaintiff as organist. The contract provided that the employment should be for one year and continue from year to year thereafter until notice of cancellation was given by either party to the other not later than June 1st of any subsequent year. The contract provided that plaintiff was to receive for the "satisfactory performance of these things," $100.00 a month. The church claimed that they might terminate the contract because circumstances in the family circle of plaintiff had become the subject of public comment and created great dissatisfaction in the

congregation. The court below refused to permit testimony to
this effect to go before the jury, and instructed the jury in effect
that the plaintiff was entitled to recover if the stipulated notice
was not given and the plaintiff was ready, able and willing to con-
tinue his services.

*Held:* That this action of the court was error.

11. RELIGIOUS SOCIETIES—*Contracts—Employment of Organist—Right to Dis-
continue the Engagement of the Organist—Satisfactory Performance—
Case at Bar.*—The instant case was an action by an organist of the
church against its board of stewards to recover his salary. Plain-
tiff's contract of employment provided that he was to receive $100.00
a month for the "satisfactory performance of his duties." Defend-
ants contended that the services to be rendered by the plaintiff
under the contract were matters of taste and hence defendants were
the sole judges of whether the services were satisfactory and might
for that reason at any time arbitrarily terminate the employment.

*Held:* That the congregation were entitled to have plaintiff perform
his part of the contract in such a manner as to be fairly and reason-
ably satisfactory to them and the persons attending the services of
the church; but the satisfactory performance was not to be determined
merely by the fancy tastes or judgment of the music committee or
the board of stewards.

12. RELIGIOUS SOCIETIES—*Contracts—Employment of Organist—Right to Dis-
continue the Engagement of the Organist—Satisfactory Performance—
Case at Bar.*—Where an organist of a church was to receive $100.00 a
month for the "satisfactory performance" of his duties, the test of
satisfaction was the accomplishment of the rendition of such music
by the organist and choir in connection with the church services as
would be appropriate and harmonious, and reasonably sufficient in
performance to satifsy those attending the religious services, and
under such circumstances as would serve to continue the organization
of a good choir and stimulate those participating in it.

13. RELIGIOUS SOCIETIES—*Contracts—Employment of Organist—Right to Dis-
continue the Engagement of the Organist—Satisfactory Performance—
Case at Bar.*—In the instant case an organist was to receive a salary
of $100.00 a month for the satisfactory performance of his duties.
If the organist's personal services were not rendered unsatisfactory
to the church membership at large by reason of his unfortunate
family circumstances and these circumstances did not disturb the
harmonious training of the choir, then the stewards of the church
could not discharge him arbitrarily by the mere declaration that
his services were no longer satisfactory. Whether or not the
organist's continued engagement would constitute satisfactory per-
formance was a question for the jury to pass upon. If the jury
found from the evidence that the stewards were justified by reason

of the circumstances shown in evidence in declaring that the organist's services were no longer reasonably satisfactory and available, then the stewards were entitled to be released from their contract.

14. RELIGIOUS SOCIETIES—*Contract with Organist—Action by Organist for Salary—Overruling Demurrer—Case at Bar.*—In the instant case, an action by an organist against the stewards of a church for a year's salary, plaintiff alleged a contract under which he was to be employed as organist for a year, the relationship to continue thereafter from year to year until one of the parties gave notice to the other three months before the expiration of the year that the contract would be terminated. He further alleged the termination of the contract by the church without having given him the notice stipulated.

*Held:* That the trial court did not err in overruling defendant's demurrer to the notice of motion for judgment.

15. RELIGIOUS SOCIETIES—*Contract with Organist—Action by Organist for Salary—Evidence—Witnesses—Opinion Evidence.*—In the instant case, an action by an organist for salary, the contract between the organist and the church provided that the organist should receive $100.00 a month for the "satisfactory performance of his duties." The contract provided that it might be terminated by three months' notice from either party to the other before the expiration of a year. Upon the trial the court did not err in refusing to allow defendant to put to witnesses a general question concluding with "will you please state whether or not the party of the second part who is plaintiff in this suit satisfactorily performed what was required of him under this contract?" as this called for a general opinion. But evidence should have been admitted so far as it bore upon what the witnesses had observed touching dissatisfaction in the congregation and tending to the injury of the church.

16. RELIGIOUS SOCIETIES—*Action Against Stewards—Evidence to Show that Defendants were Members of the Board of Stewards—Case at Bar.*—In the instant case, an action by an organist against the board of stewards of a church for his salary, the court did not err in admitting evidence by the plaintiff to show that defendants were members of the board of stewards of the church at the time of the making of the contract with the organist, and at the time the organist's services were dispensed with.

17. RELIGIOUS SOCIETIES—*Action by Organist for Salary—Damages—Case at Bar.*—An organist's contract with the board of stewards of a church provided that the agreement under which he was employed should remain in effect for one year from September 1, 1924, and continue from year to year thereafter until notice of cancellation was given by either party to the other not later than June 1st of any such subsequent year. No notice of cancellation was given, but on October 15, 1925, the board undertook to terminate the contract as

of September, 1925, by reason of an alleged failure on the part of the organist to comply with substantial terms of the contract relating to its performance.

*Held:* That such a termination could only take effect from the time it was demanded, therefore the organist was entitled in any event to his salary from September 1st to October 15th, the residue of the second year's salary alone being in issue.

Error to a judgment of the Court of Law and Chancery, of the city of Norfolk. Judgment for plaintiff. Defendants assign error.

*Reversed and remanded.*

### Statement of Case.

The Ghent Methodist Episcopal Church South is located in one of the best residential sections of the city of Norfolk, is one of the leading churches of the city, its membership being composed of prominent and influential citizens. The church had a music committee of three persons, elected by the board of stewards, which is a selected number of members of the church congregation constituting the governing body of the church, administering its secular, financial, and doubtless to some extent, its religious affairs.

The stewards were nominated by the pastor to the quarterly conference of the church, and the conference elected the membership of the board from such nominations.

The music committee in office in May, 1924, engaged the services of Mr. Zehm as organist and choir director for the year commencing September 1, 1924, and entered into a written agreement with him as follows:

"This agreement made this 31st day of May, 1924, between Ghent Methodist Episcopal Church South by its music committee, party of the first part, and Harry J. Zehm, party of the second part, both of Norfolk, Virginia.

"Witnesseth: That for and in consideration of the conditions hereinafter set forth, the party of the first part agrees to employ the party of the second part as organist director of its church and choir music, and the party of the second part agrees to accept the position, attend and serve at all regular services and necessary rehearsals, and in general to serve to the best of his ability, using due diligence at all times to promote the church music of the party of the first part to a high degree of excellence and efficiency.

"It is further agreed that for the satisfactory performance of these things the party of the first part agrees to pay to the party of the second part twelve hundred dollars per annum, payable in equal monthly installments, provided, however, that the party of the second part furnish an acceptable substitute at his own expense when it is necessary for him to be absent from his duties, except that one month vacation will be allowed during the summer season with full pay, but with the understanding, however, that during such period a satisfactory substitute will be furnished by the party of the second part at an additional cost to the party of the first part not exceeding $40.00.

"The purpose of this agreement is to provide appropriate, harmonious, devotional music for the church services of the party of the first part, and in subscribing hereto the parties agree, each with the other, to co-operate solely toward that end.

"This agreement shall remain in effect one year from September 1, 1924, and continue from year to year thereafter until notice of cancellation is given by either party to the other not later than June 1st of any such subsequent year.                    "A. L. GRIFFIN.
                                              "A. B. LACY.
                                              "N. G. WILSON.

"HARRY J. ZEHM."

After serving under this contract for twelve months and upon returning from a vacation during the month of August, Mr. Zehm reported to the board for duty on September 1, 1925, and was told by the chairman of the music committee that his vacation would be extended to October 1st following. He reported on the 1st of October and the resumption of his service was again put off. He then received the following communication from the board:

·"October 15, 1925.

"Mr. HARRY J. ZEHM,

"Norfolk, Virginia.

"DEAR SIR:

"The duty of writing this letter is very disagreeable to me, but I am sure you will permit me to say, by direction of the board of stewards of Ghent Methodist Church, that the board regards you as no longer available as organist of the church, and your engagement terminated, as of September 1, 1925, by the circumstances attending the cessation of your duties. The board deeply regrets the unhappy ending of your engagement. It believes, however, that you appreciate the fact that it represents a church congregation and that, in view of all the circumstances to be considered, the continuance of your services could not possibly be acceptable to the congregation nor satisfactory to yourself.

"If you desire to see me personally touching this matter, I shall, of course be glad to talk with you.

"Yours very truly,

"J. CARL PECK,

"Secretary, Board of Stewards of Ghent Methodist Church."

Zehm subsequently instituted this action by notice of motion for judgment against the members of the board of stewards to recover his salary for the year commencing September 1, 1925, based upon the failure of the board, as the appointing power and principal of the music committee, to give the three months' notice of the termination of the contract at the end of the first year, as stipulated in the agreement and so dismissing him without reason during the second year. Upon the trial at the conclusion of the evidence the court gave the following instructions:

"The court instructs the jury that if they believe from the evidence that the defendants entered into a contract with the plaintiff to pay him $1,200.00 a year in monthly installments of $100.00 each, and that Harry J. Zehm, the plaintiff, entered upon the performance of such contract, and that there was a oprvision of said contract, said contract to be renewed from year to year unless notice was given as of June 1st of the year in which said contract was running, that the contract was renewed for another period of one year, and if you further believe from the evidence that the plaintiff stood ready, able and willing to fulfill his contract and that the defendants declined to accept his services as provided in the contract, then you will find for the plaintiff.

"The court instructs the jury that if you find for the plaintiff you can only find against such of the defendants as you believe from the evidence were present at the meeting of the board and were responsible for the action taken to dispense with the services of the plaintiff.

"The court instructs the jury that the burden is upon the plaintiff to prove to you by a preponderance of the evidence the individual liability of the defendants."

A verdict and judgment was awarded the plaintiff for the amount sued for, whereupon the defendants obtained a writ of error.

*Thomas W. Shelton* and *Alfred Anderson*, for the plaintiffs in error.

*Walter Sibert*, for the defendant in error.

CRUMP, P., after making the foregoing statement, delivered the following opinion of the court.

The plaintiffs in error complain of the rulings of the trial court in overruling their demurrer to the notice of motion, in excluding certain evidence offered by them, in admitting evidence offered by the plaintiff, in refusing their instructions and granting others, and in denying a motion to set aside the verdict.

[1-4] The contentions upon which these assignments of error are based, and which the defendants endeavor to support in their argument here, are that Zehm contracted, through the music committee as agents, with a known principal, the Ghent Methodist Episcopal Church South, named in the instrument, and therefore the agents are not liable to suit, and no one is so liable except the disclosed principal; and further that the contract discloses upon its face that the services of Zehm were to be satisfactory and the church had a right arbitrarily to declare at any time that they were not satisfactory and so terminate the agreement and discontinue Zehm's employment.

We do not think the first of these propositions is tenable. The word "church" is used with varied significance, dependent upon the circumstances attending its use. It may refer only to the church building or house of worship; it may mean in a more consecrated way the great body of persons holding the Christian

belief, or in a restricted sense confined to those adhering
to one of the several denominations of the Christian
faith, at large or in a definite territory; and it may
mean the collective membership of persons constituting
the congregation of a single permanent place of wor-
ship. It is in this latter sense that the word occurs in
the contract, in which this church "of Norfolk, Vir-
ginia," through the music committee, is named as a
party. The music committee evidently desired to
secure for the congregation a competent and ex-
perienced organist, who acting also as a choir master,
should not only attend to the selection and rendition
of appropriate music, but should be personally and
professionally capable of selecting, attracting and hold-
ing in the choir, under his training, members of the
congregation qualified to take part in the choir singing.
It is almost the universal custom in our churches to
have attractive music in connection with religious serv-
ices and devotional exercises, and to that end to
arrange for and keep up a choir capable of rendering
sacred music in a manner pleasing and satisfactory to
a large and discriminating congregation. In Virginia
churches are not incorporated and under the policy
of our law cannot be. Our statutes provide for the
appointment of trustees to hold title to the permanent
property of the church, and their powers are limited
by the law authorizing their appointment. *Globe
Furniture Company* v. *The Members of Jerusalem Church,*
103 Va. 559, 49 S. E. 657. In that case two of the
trustees of the church bought certain furniture for the
church and a judgment obtained against the several
trustees for the purchase price was claimed to be a
lien upon the property held by the trustees for the
church. The court held that a lien upon the church
property could not be so created. The court, however,

adds: "The judgment asserted is valid as to the individuals against whom it was obtained, but has no validity as a lien upon the real estate of the appellees." In the instant case there was no community of interest for business purposes between the members of the church. The board of stewards was from necessity the recognized instrumentality for handling the current funds, and, if they saw fit, for making contracts in reference to the use and disbursement of the funds. The music committee was an agent for the board, and it is manifest that they were so considered from the minutes put in evidence and from the testimony of its members. Zehm looked to the board for the payment of his salary. The music committee acted under the authority of the board.

[5–7] The board, by resolution, directed its secretary to notify Zehm that the board no longer regarded him as available and that his engagement was terminated. The contract was made on behalf of the board as the real principal. There must be competent parties to a contract. However it may be in other States, in Virginia a church or its congregation cannot contract, certainly not unless perhaps by reason of a specially held meeting and through a special committee appointed by the members attending such meeting. Under the contract in question, therefore, either the members of the music committee alone are liable, or the board of stewards are liable as upon a contract made for them. And we think the latter is the result in the instant case. It is urged on behalf of the board that the church being named in the contract as a principal acting through the music committee, no contract at all resulted as the church itself was not competent to make a contract and so create a lien on its properties. The church, it is true, could make no contract and by

its breach create a lien on the church property.   But
it was held in *Globe Furniture Company* v. *Jerusalem
Church, supra,* that in such a case the individuals
making the contract would be liable.   The parties in
the instant case evidently intended to enter upon a
binding obligation.   The court should not say that no
such obligation resulted because the church *es nomine*
is not a legal entity, is not competent to sue or be sued
and could not be party to a contract.   Applying the
time-honored maxim *ut res magis valeat quam pereat,*
we hold that the board of stewards should be taken as
the actual principal acting through the music com-
mittee.

[8, 9] In *Lunsford & Withrow* v. *Wren,* 64 W. Va.
458, 63 S. E. 308, it was held that a building contract
made on behalf of the Institutional Baptist Church by
Wren, president of the board of trustees, was binding
on the trustees, and the church not being a corporation,
and not capable of being sued, was not a necessary
party to the suit.   In 1 Mechem on Agency (2nd ed.)
section 1389 the author deals with the status of a
person assuming to act for a group of others unin-
corporated, such as voluntary societies and unincor-
porated churches and the like.   He there says: "It
is of course possible, in such a case, that the assumed
agent may have expressly excluded personal respon-
sibility, or that the person extending the credit may
have done so in reliance upon voluntary payments, sub-
scriptions or funds to be raised, but where it does not
appear that he has done so, the person who assumes to
act will usually be personally responsible."   And see
also 23 R. C. L. page 432, 1 Williston on Contracts,
section 309.   In *Trust Company* v. *Snyder,* 148 Va.
381, 138 S. E. 477, the treasurer of the church was held,
under the circumstances there, to be representative of

the trustees.  The board of stewards in the instant
case, in the usual discharge of their functions, caused
Zehm to be employed through their music committee,
and he has a right to look to them for a fulfillment of
the provision of the contract, and we are of opinion,
therefore, that the members of the board are jointly and
severally liable to Zehm.

[10, 11] The board of stewards as defendants, on the
trial, offered evidence tending to prove that owing to·
some circumstances in the family circle of Zehm, which
had become the subject of public comment and created
great dissatisfaction in the congregation and threatened
disruption of the chior and possible injury to the church,
the right accrued to the board under the  terms of the
contract,  to  discontinue  the  engagement  of  Zehm
without further liability.  The court below refused to
permit this testimony to go before the jury, and in-
structed the jury in effect that the plaintiff was entitled
to recover if the three months' notice was not given
and the plaintiff was ready,  able and willing to con-
tinue his services.

In this we think there was error.  On behalf of the·
board it is further contended that the services to be
rendered by the plaintiff under the contract were mat--·
ters of taste, to serve personal convenience or satisfy
individual preference, and hence the defendants were
the sole judges of whether the services were satisfactory,
and might for that reason at any time arbitrarily
terminate the employment.  This conception of the
case is based upon *Carpenter* v. *Chemical  Co.*, 98 Va.
177, 35 S. E. 358.  In that case the court held that in a
commercial contract of sale of certain mineral rock to·
be purchased by the buyer *if he could use it satisfac-
torily in his business*, the buyer could not arbitrarily
repudiate the contract, but must show that he did so

fairly and in good faith, and he had no right to decline to take the mineral because he could make better terms with others. The court there also recognized that, where the contract was to "gratify taste, serve personal convenience or satisfy individual preference," then the party for whom the work is done may determine for himself whether it shall be accepted. The contract in the instant case does not fall within that latter class. This contract obligates Zehm "to accept the position, attend and serve at all regular services and necessary rehearsals, and in general to serve to the best of his ability, using due diligence at all times to promote the church music of the party of the first part to a high degree of excellence and efficiency." For the "satisfactory performance of these things," he was to receive $100.00 a month. The contract further stipulates that "the purpose of this agreement is to provide appropriate, harmonious and devotional music for the church services of the party of the first part, and in subscribing hereto the parties agree, each with the other, to co-operate solely toward that end." Considering these contractual terms together, and giving full recognition to the requirement of "satisfactory performance," but reaching a conclusion as to the intent of the parties in the light of the circumstances, of the purpose had in mind, and the character of services to be rendered by Zehm, both as organist and as choir director and master, it becomes obvious that the congregation were entitled to have Zehm perform his part of the contract in such manner as to be fairly and reasonably satisfactory to them and the persons attending the servies of the church.

[12,13] The principles of law governing the enforcement of contracts of this character are dealt with in 13 Corpus Juris, pages 675-681, and in 1 Williston on

contracts, section 44. The satisfactory performance in the instant case was not to be determined merely by the fancy, taste, or judgment of the music committee or the board of stewards. The test of satisfaction was the accomplishment of the rendition of such music by the organist and choir in connection with the church services as would be appropriate and harmonious, and reasonably sufficient in performance to satisfy those attending the religious services, and under such circumstances as would serve to continue the organization of a good choir and stimulate those participating in it. The music was to be rendered for the congregation. If Zehm's personal services were not rendered unsatisfactory to the church membership at large by reason of the unfortunate circumstances in which he found himself, and those circumstances did not disturb the harmonious training of a choir at rehearsals or tend to disrupt the rendition of the music in general, then the stewards could not discharge him arbitrarily by the mere declaration that his services were no longer satisfactory. Whether or not Zehm's continued engagement would constitute satisfactory performance was a question for the jury to pass upon. If the jury find from the evidence that the stewards were justified by reason of the circumstances shown in evidence in declaring that Zehm's services were no longer reasonably satisfactory and available, then the defendants are entitled to be released.

This is not simply a case in which an employer, whose personal satisfaction is made the test, may declare the services unsatisfactory at his will, provided he acts honestly and not in bad faith. The possible rendering of the services not satisfactory here, within the intendment of the parties, must necessarily arise if at all out of circumstances and conditions not depend-

ent upon the will nor uncontrolled judgment of the employer, but dependent upon collateral circumstances and facts such as would justify a reasonable man in the judgment that the continued services would no longer be satisfactory. The test of these circumstances appearing in the evidence must be that they reasonably uphold the conclusion of the unfitness of the employee.

As was said in *Fechteler* v. *Whittemore*, 205 Mass. 6, 91 N. E. 155, where the question was whether the goods bought were satisfactory: "It was not intended to be left to the whim or caprice or even altogether to the good faith of the defendants to say whether the goods were satisfactory. Under the circumstances the term 'satisfactorily' must be held to mean satisfactorily to a reasonable man, and the jury were so instructed." So in *Carpenter* v. *Chemical Co., supra,* while the court approved a brief instruction in which the jury were told that "in determining whether the defendant could use the same satisfactorily, it was bound to act fairly," the court states, however, what it understood the whole instruction to mean, for the court says: "The gist of the instruction is that the defendant was required to act fairly in refusing to take the Tennessee rock alleged to have been contracted for by it conditionally, and that in determining whether or not the rock was satisfactory, the jury should take into consideration the evidence bearing on that point, and determine whether the rock was in good faith not satisfactory to the defendant." And the court immediately adds that it was contended by the defendant that it alone was the judge and had the right to reject the stock, *even though the jury might think that it ought to have been satisfactory;* and this contention is discussed and disallowed.

There may be apparent lack of harmony in the decisions upon these questions, but it doubtless arises

from the great variety of circumstances under which
the questions are presented.    The relations of the con-
tracting parties to each other, the real object of the
contract, and the character of the services to be
rendered, or the use to which articles sold is to be put,
and all other circumstances must be considered in de-
termining the rights of the parties.    In *Sun Company* v.
*Burruss*, 139 Va. 279, 123 S. E. 347, a sale of oil was
made to be shipped at intervals, with the stipulation
that the "financial responsibility of the buyer must at
all times be satisfactory to seller or shipments may be
suspended," and the court held that if the buyer's
financial responsibility was at any time unsatisfactory
*to the seller*, it had a right to suspend shipments and
make defense to a suit on the contract upon that
ground, provided the shipments were suspended in good
faith for that reason.    There the agreement was that
the seller was at liberty to suspend shipments, if at any
time the buyer's financial responsibility appeared to
him unsatisfactory, and the court gave effect to the
agreement.

Upon the assignments of error we are of opinion
that:

[14] The trial court did not err in overruling defend-
ants' demurrer;

[15] The court did not err in refusing to allow the de-
fendants to put to the witnesses the general questions
concluding with: "Will you please state whether or not
the party of the second part who is plaintiff in this
suit satisfactorily performed what was required of him
under this contract?" as this called for a general
opinion.    The evidence referred to in this second as-
signment should, however, have been admitted in so
far as it bore upon what the witnesses had observed
touching dissatisfaction in the congregation, and tend-
ing to the injury of the church;

[16] The court did not err in admitting the evidence offered by the plaintiff which is the subject of the third assignment;

The court did not err in refusing defendants' instruction complained of in the fourth assignment, as that instruction allowed the defendants to discharge the plaintiff arbitrarily.

The fifth assignment is based upon the granting of instructions No. 1 and No. 2 offered by the plaintiff.

The court erred in granting No. 1, which is in conflict with the views we have expressed; but did not err in giving instruction No. 2, the only objection made thereto being that "there is no evidence to support or show any liability on any individual defendant in this action."

The court erred in refusing to set aside the verdict of the jury.

[17] The requirement in the contract for three months' notice has reference only to the termination of the agreement at the expiration of the first or any subsequent year, so that without such notice the contract continued after September 1, 1925, as a yearly contract. No notice having been given to terminate the contract at the end of the first year, the parties continued bound by its provisions for a second year. The defense of the board of stewards is based upon a right to terminate the contract by reason of a failure on the part of Zehm to comply with substantial terms of the contract relating to its performance, and such termination could only take effect from the time it was demanded. Therefore, Zehm was entitled, upon the evidence on the trial, to a recovery of his salary from September 1st to October 15th, the residue of the second year's salary being in issue.

The judgment of the trial court must be reversed,

the verdict set aside, and the case remanded for a new trial to be had not in conflict with the views expressed in this opinion.

*Reversed and remanded.*

CHRISTIAN, J., dissenting:

I find I am unable to concur in the majority opinion in this case for the following reasons:

The parties to the contract in this litigation are expressly and clearly set forth as follows:

"This agreement made this 31st day of May, 1924, between Ghent Methodist Episcopal Church South by its music committee, party of the first part, and Harry J. Zehm, party of the second part, both of Norfolk, Virginia." The purpose of said contract was to employ said Zehm as organist and music director at the church services and religious worship of the congregation that usually worships at said church.

Sections 58 and 59 of Virginia Constitution prohibit religious congregations from contracting or being contracted with, or suing or being sued; or holding or owning property, except to a limited extent fixed by statute and in that latter case the title and control must be vested in trustees subject to direction of the courts. So that religious associations are not recognized as legal entities and cannot appoint agents therefore be principals.

By the discipline of the Methodist Church the members of the board of stewards are elected by the quarterly conference upon nomination of the preacher in charge, who is appointed annually to the station by the presiding Bishop. The preacher in charge is clothed with all authority to direct the worship and services of the church. The stewards are but his assistants and advisers, in carrying out the objects and purposes of the church organization.

The duties of the board of stewards, composed of the preacher in charge and members, like vestries and boards of deacons, are to make up the budget of expenses of the church activities and raise the necessary funds to pay for the same by voluntary contributions from the members. This is according to the spirit of the constitution; that the support of the church or ministry shall be by voluntary contributions or the subject of private individual contract, and neither the General Assembly nor the courts directly or indirectly can contravene this policy of the organic law, and compel any member of a congregation to contribute to the support of the church or ministry contrary to his will and intention.

There are some rules of the law of agency, which in some cases have held parties entering into contracts for unincorporated bodies or religious congregations personally bound by such contracts. One of the principles upon which individual liability is sometimes enforced, is that the contract is of such character that it can be made effective only by making the agent who made it personally liable therefor, unless it clearly appears by the contract that he did not intend to be bound. Am. & Eng. Encyc. Vol. 1 (1st. ed.) page 406.

The rule of law laid down by the courts and followed for more than a century is: "But agents of charitable, religious or political and kindred societies are as a rule not responsible on contracts made with third parties, when the third party knows *that they are acting for such societies; unless it be distinctly understood that such third party is dealing with the agent on his personal credit.*" *Devess* v. *Gray,* 22 Ohio St. 159; *Tobey* v. *Claflin,* Fed. Cas. No. 14066, 3 Sumner (U. S.) 379; *Eichbaum* v. *Irons,* 6 Watts & Sergeant (Pa.) 67, 40 Am. Dec. 540; 1 Am. & Eng. Encyc. (1st ed.) page

406, note.   These rules are never applicable except to
the agent actually making the contract.

Mechem on Agency, Vol. 1 (2nd ed.) section 1389,
discussing this rule of law states that the determinative
principle underlying it is "to whom the credit was
extended."   And while the agent of an unincorporated
association is presumed to pledge his own credit in
order to make the contract effective, there are two
exceptions to the rule, (a) "where the agent expressly
excluded personal responsibility, (b) or that the person
extending credit may have done so in reliance upon
voluntary payments, subscriptions or funds to be
paid."

Zehm knew that the services rendered a religious
congregation in its worship was only payable out of vol-
untary subscriptions from the members and that neither
the music committee nor board of stewards were liable
personally for his salary unless it was distinctly under-
stood between them that they were to be individually
or collectively so bound, yet he made his contract
with the church and required no security, and the court
cannot now make a contract for him.

Zehm knew, the people generally know, and the law-
makers, legislators and courts, know that Christian
denominations of this State are governed by a higher
law than statute or decision, and do not require the
sheriff to compel them to meet their moral obligations.
Nor would this suit ever have been necessary, but for
the situation Zehm's wife had placed him before the
public.   It will be a sad day for religion in this State
when the singing in the worship of God is made the
subject of barter and pelf like ordinary amusements.

The result of the majority opinion will be to make
boards of stewards, vestries, and boards of deacons
quasi-corporations or partnerships, whereby the mem-

bers, jointly and severally, without their consent or intention are bound by law for all the debts and contracts of their various congregations. It will be so far-reaching and contrary to the genius and spirit of our institutions, that few people will serve in such capacity.