# T. B. WINGO v. COUNTY BOARD OF EDUCATION OF STEWART COUNTY et al.

Middle Section. July 12, 1930.

Maddox & Maddox, of Huntingdon, and J. W. Rice, of Dover, for appellant, Wingo.

W. C. Howell, of Dover, and Horace B. Stout, of Clarksville, for appellees, Boards of Education.

CROWNOVER, J. ·T. ·B. Wingo, a school teacher, filed this bill against the county board of education of Stewart county and the local board of education of Big Rock School in Stewart county, naming the members and chairman of each board and the county superintendent of schools and secretary of the county board, as defendants, seeking to ·recover the sum of $490, the alleged balance due him on his salary under the contract of employment in which he was employed as principal and teacher in the school at Big Rock, which contract he alleged was breached by the defendants, in that they discharged him before his term had expired.

He alleged in the bill that said boards had entered into a contract with him to teach the school for eight months, during the year 1923-24, at $140 per month, and that he began teaching in September, 1923, and continued until the last of January, 1924, when he was notified that his services were no longer required and that they had employed another teacher in his place; that he had sought other employment but was unable to ·procure employment and remained in Big Rock ready and willing to comply with the contract; that no formal written contract was executed, but the chairman of the local board ·and the secretary of the county board had written him that he was employed for eight months, which letters he filed in evidence.

Later the complainant filed an amended bill, seeking to hold the individual members of the local board liable as individuals on the contract.

The defendants demurred to the amended bill, insisting that they were not individually liable on the contract, as it was made as a board in the character of public officials and not personally or individually, hence they insisted they were not individually liable.

The Chancellor sustained the demurrer to the amended bill and held that the individual members of the boards were not liable on the indebtedness or for breach of the contract.

The county board answered and denied that it had employed the complainant as teacher or had entered into a written contract with him, and also denied that it had discharged him.

The local board admitted that it had employed him to teach in the high school, which was not a county school, and his salary was to be paid by private subscriptions made by the patrons of the high school,

but that he was discharged, after notice, for inefficiency and failure to maintain discipline in the school.

The Chancellor held that the county school board had not employed the complainant as teacher and that it had no written contract with him and did not discharge him; hence he held that board was not liable and he dismissed the bill.

Complainant excepted to the action of the Chancellor, appealed to this court and has assigned thirteen errors, all of which go to the proposition that the Chancellor erred in holding that complainant did not have a valid contract with the county board and that it did not discharge him, and that the individual members of the local board were not individually liable for the breach of the contract. It was further assigned as error that he had no notice of the charges preferred and was wrongfully discharged without cause and without a hearing.

The facts necessary to be stated are, that Stewart county maintained a public school at Big Rock, in Stewart county, in which eight grades were taught, but the citizens of the community desired to have high school classes also taught at that school and selected five of its citizens, known as the ''Local Board,'' to employ teachers and to raise their salaries by private subscriptions made by the patrons of the high school, but there was no agreement to consolidate the schools and the boards. The county board had permitted the local board to select all the teachers, but the county paid only the salaries of the teachers who taught in the public school up to the eighth grade, and it was incumbent on the local board to employ the teachers for the high school and to raise salaries by private subscriptions.

In the summer of 1923, the complainant, Wingo, was engaged as principal and teacher in the Big Rock School. No formal written contract was executed, but he was employed by correspondence, which was filed in evidence.

A letter was written him by Dr. E. M. Cherry, chairman of the local board of education at Big Rock, notifying him that the local board had elected him as principal for the 1923-24 term at $140 per month. Under date of July 16, 1923, Dr. Cherry again wrote him, stating:

''I have asked the superintendent to mail you duplicate forms of contract. I hope he will attend to it at once, but he may not, for he is sometimes quite negligent of his duties, however, the county board never interferes with any contracts we make.

''If he sends you the contracts he may only send it for seven months, as that is the length of the public term, but we will continue another month, by a stock company.''

W. C. Howell was county superintendent and secretary of the county school board, and wrote to Mr. Wingo as follows:

"Replying to your letter for a contract for the Big Rock High School, will say that Dr. Cherry has written me asking me to send you a contract for that place, but you doubtless know that these contracts are in book form and it would make it rather difficult to send without detaching from the book. You may depend on securing a contract as soon as you come to this county and you may hold this letter to protect you in this matter if you feel you need anything of that nature. You can understand that it would not be convenient to send the contract book.

"When you come to this county bring your certificate to my office, and we will draw the contracts."

Wingo's election as principal was approved by the entire local board and Dr. Cherry was directed to correspond with him, but his election was not taken up with the county board of education, and W. C. Howell, county superintendent of education, testified that he was individually responsible for the letter that he wrote to Wingo, and that his action was not authorized by the board.

The county board did not employ Wingo, had no formal written contract with him, and did not discharge him.

At the opening of school Wingo stated to the local board that if at any time his work was not satisfactory he would immediately resign. His salary was paid each month by the cashier of the bank. The county board sent to that bank each month $250 for the payment of salaries of the elementary teachers. To this fund was added funds received by subscription and donations from the patrons of the high school, which were made for the payment of high school expenses. But it does not clearly appear whether they were kept separate from the public school funds.

There was much complaint in the community of the discipline maintained by Wingo and of the quality of instruction given by him. The members of the local board repeatedly spoke to him about it, but no improvement was shown.

Some time about the middle of January, 1924, the local board and the county superintendent informed Wingo that his services were not satisfactory on account of the lack of discipline in the school and inefficiency in teaching, and that they would have to employ another teacher; that he could teach until another teacher was secured and then he would be discharged. Two or three weeks later, Dr. Cherry of the local board and Bagwell, one of the members of the county board, called on Wingo and informed him that a new teacher would take charge next morning and that he was discharged. The new teacher took charge on the next morning and taught the remainder of the school term.

Wingo endeavored to secure another position, but was unable to get employment until the next fall and he remained in Big Rock ready and willing to comply with his contract.

After an examination of the record and the authorities we are of the opinion that the decree of the Chancellor must be affirmed.

We are of the opinion that the county and the county school board are not liable, because the county board did not employ Wingo, had no written contract with him, and did not discharge him.

Under Shannon's Code, section 1448, it is made a misdemeanor for the county school board to enter into a contract with a teacher unless the contract shall be signed in duplicate in ink, each party holding a copy. Even where a contract was signed by the board in office, but was not signed by the teacher until after a new board was put into office, which, in the meantime, had made a contract with another teacher, and had put him to teaching the school, the last contract is valid, and the first is invalid. To make the contract valid, it must be approved by the board in office at the time it is signed by the teacher. Crawley v. Leonard, 10 Lea, 344.

However, we are of the opinion that he had a valid contract with the local board to teach the high school, and the aforesaid Code section 1448 does not apply, as the high school was not a public high school but was maintained by private subscription, and if the local board and its members wrongfully breached the contract they would be individually liable. See Forsberg v. Zehm (Va.), 143 S. E., 284, 61 A. L. R., 232; 23 R. C. L., 432, 458; 1 Mechem on Agency (2 Ed.), sec. 1389; 1 Williston on Contracts, sec. 309.

But we are of the opinion that the individual members of the local board did not breach the contract and are not liable, because he was discharged for a cause, for his inefficiency and want of discipline in the management of the school.

The proof shows that much complaint was made by practically all of the patrons of the school of his inefficiency and want of discipline, and several of the patrons took their children out of school and sent them elsewhere, and others refused to pay the private subscription. Hence they could not raise the funds to pay his salary. The proof shows that many of the boys left the school and loafed in town about the stores for hours at a time. They shot fire-crackers in the school room, threw chalk and shot over the floors and continually raised disturbance and disorder in the school, which interfered with those who were inclined to study. Much complaint was had as to the mode of teaching mathematics. Several pupils testified that the boys would work an example in algebra on the blackboard, purposely make all kinds of mistakes, to the amusement of the other pupils, which complainant failed to detect and pronounced the work as excellent. They testified that they thought he used a key, known as a ''jack,'' for

algebra and geometry, for the reason that when he was asked to solve a problem he would require them to work on it for a day or two and then he would bring the solution written in outline and require some of the pupils to put it on the blackboard and would then let the pupils explain it, and he never himself explained the solution of any of the problems. He testified twice, but did not deny the use of a key. There is nothing reprehensible in the use of a key by a teacher and it is no ground for a discharge. But as complainant had a permanent high school certificate only to teach Latin subjects, it was only an indication of his inefficiency.

When all these matters were drawn to his attention and the lack of discipline stressed by the board, the complainant's only reply was that he was physically unable to handle these boys and the only recourse was to expel them, and there is much testimony in the record that he did not attempt to preserve order and the decorum necessary for the successful management of a high school; hence, we are of the opinion that the local board was justified in discharging him.

A teacher may be discharged for incompetence, or neglect of duty, or immorality, notwithstanding his employment was for a certain time. 25 Am. & Eng. Ency. of Law (2 Ed.), 16-17.

It is insisted that the complainant could not be discharged without formal notice of the charges and a trial. Had he been teaching a public school, the right to dismiss him while teaching under a valid contract, could only be exercised after notice of the charges and upon proper testimony, as a teacher has a right to be heard. See Morley v. Power, 5 Lea, 691; 10 Lea, 219; Butcher v. Charles, 95 Tenn., 532. But as he was employed to teach a private high school, specific charges, notice and a formal trial before discharge were unnecessary. As before stated, he was given notice of the want of discipline in his school and inefficiency as to the management and the manner of teaching, but to no avail, and he was discharged. We think he had sufficient notice, and as this was a private contract, no formal trial was necessary. See Hall-Moody Institute v. Copas, 108 Tenn., 582, 69 S. W., 327.

Professors and teachers in private colleges and schools occupy merely contractual positions as employees in relation to the trustees and the school board. 29 Am. & Eng. Ency. of Law (2 Ed.), 326.

One who is employed to render services as a teacher, undertakes, in the absence of a special contract, to exercise reasonable skill and judgment, and ordinary care and diligence in rendering such services. 35 Cyc., 816.

Hence, we are of the opinion that the decree of the Chancellor should be affirmed and that the assignments of error must be over-

ruled. It results that the bill will be dismissed and the cost of the cause including the cost of the appeal is decreed against complainant Wingo and the sureties on his appeal bond.

Faw, P. J., and DeWitt, J., concur.