# Richmond

W. B. CATLETT v. H. K. HAWTHORNE, ET ALS.

November 12, 1931.

Present, Campbell, Holt, Epes, Hudgins and Gregory, JJ.

The opinion states the case.

*L. W. Graves, Jr.*, and *R. G. Deane*, for the plaintiff in error.

*E. V. Walker* and *W. O. Fife*, for the defendants in error.

HOLT, J., delivered the opinion of the court.

In 1927, the High Street Baptist Church at Charlottesville, that it might extend its sphere of usefulness, decided to build at, or near, the University of Virginia a new and more ambitious structure for that congregation, and it did after-

wards build there such a church at a cost approximating $160,000.00. It was of course necessary to place in it lighting fixtures, etc., and to that end the building committee of the church, composed of H. K. Hawthorne, R. Merritte Robinson and others, contracted with the plaintiff to supply them. He did supply and install them in a way entirely satisfactory. When the work was done payment was demanded. There was then no money in hand out of which he could be paid, and in lieu thereof, after some negotiations, he was tendered and accepted this note.

"Charlottesville, Va., November 1, 1929.

"Ninety days after date, for value received we promise to pay to the order of W. B. Catlett Electric Co., $2,350.00, twenty three hundred, fifty and 00/100 dollars, negotiable and payable without offset at the National Bank of Charlottesville, Charlottesville, Va.

"The makers and endorsers of this note do each hereby waive the presentment of and demand for payment of said note, and also waive protest, notice of protest, and notice of dishonor and nonpayment thereof; and do hereby expressly agree that should the holder of this note give notice of presentment, demand for payment, protest, notice of dishonor and nonpayment thereof, that the giving of such notice shall not affect the validity of the above waiver; but said waiver shall be as valid and binding as if such notice had not been given. The said makers and endorsers do also hereby waive the benefit of their homestead exemption as to this obligation, and further agree to pay an attorney's fee of ten (10) per cent of the amount of this note for collection in case payment shall not be made at maturity.

"Signed—

"Trustees High ⎫ H. K. Hawthorne
"Street ⎬ M. L. Rea
"Baptist Church ⎭ R. Merritte Robinson."

This note was not paid at maturity and on May 31, 1930, its payee filed his notice of motion for judgment against Hawthorne, Rea and Robinson, its makers, and in that motion described them as "Trustees High Street Baptist Church." Thereupon these defendants filed this demurrer:

"And now comes the defendants, by counsel, in the above styled suit, and say that the notice of motion heretofore filed in this cause is not sufficient in law, and assign reasons therefor, as follows:

"(1) That neither the trustees of a religious congregation nor the church itself can be sued unless the obligation created by the trustee has been approved by the court in manner provided by law;

"(2) That the obligation here sued upon has not been so approved and the notice fails to make any such allegation.

> "H. K. HAWTHORNE, M. L. REA,
> "R. MERRITTE ROBINSON,        Trustees,
> "HIGH STREET BAPTIST CHURCH
>                    "By Counsel."

It was sustained and the motion was dismissed.

Afterwards, on November 18, 1930, Mr. Catlett filed in said court another motion for judgment to which these same defendants were made parties in their individual capacity.

To that motion sundry pleas, demurrers, etc., were tendered. Finally the issue was submitted to a jury which found for the defendants. That verdict the court confirmed and from that order of confirmation a writ of error has been obtained.

We have seen that the position of these defendants, as evidenced by their demurrer to the first motion for judgment, was that they were not liable as trustees and that the church itself was not liable because it had not in any manner, provided for by law, authorized the execution of this note.

Somebody should pay, for it is concededly a just debt, and if paid at all it must be paid either by the church

or by those who authorized or ratified the transaction out of which this indebtedness arose. *Globe Furniture Co.* v. *Trustees of Jerusalem Baptist Church*, 103 Va. 559, 49 S. E. 657; *Forsberg* v. *Zehm*, 150 Va. 756, 143 S. E. 284, 287, 61 A. L. R. 232.

No one should be permitted to whistle creditors down the wind, least of all churches and those who purport to act for them. *Uberrima fides* is a standard which they should and do very generally observe.

■ "Members of an unincorporated church organization, who are actually instrumental in incurring liabilities for it, or who either authorize or ratify its transactions or those made in its name, are personally liable therefor, while those who in no way participate in such transactions are exempt from liability. Thus it has been held that the members composing a building committee of an unincorporated church organization in charge of the work of constructing a church are individually liable for material furnished them for building, although it is charged to the organization and the seller was informed that the material would be paid for out of the proceeds of church fairs, voluntary subscriptions, and donations." 23 R. C. L. 432.

■ At the instance of these defendants the trial court has held that they had no authority to execute the note as trustees. In other words that in doing so they were unauthorized and to that extent were agents acting beyond the scope of their authority.

■ "An agent will be held personally liable where he professes to enter into a contract for a principal who is at the time nonexistent, or legally incompetent or irresponsible, even though in thus entering into the contract he acts in good faith, as an agent assuming to contract for a principal must make a contract binding upon some principal, or else he himself is liable. In accordance with this rule it has been held that an agent is personally liable where he professes to enter into a contract on behalf of an unincorporated as-

sociation, club or committee, or on behalf of a corporation, before its incorporation, even though the contract is entered into under the seal of the corporation." 2 C. J. page 808. Bricks can be made without straw but to be an agent there must be a principal.

For a stronger reason this rule applies to trustees who undertake to act as agents.

"A trustee is not an agent. An agent represents and acts for his principal, who may be either a natural or artificial person. A trustee may be defined generally as a person in whom some estate, interest, or power in or affecting property is vested for the benefit of another. When an agent contracts in the name of his principal, the principal contracts and is bound, but the agent is not. When a trustee contracts as such, unless he is bound no one is bound, for he has no principal. The trust estate cannot promise; the contract is therefore the personal undertaking of the trustee. As a trustee holds the estate, although only with the power and for the purpose of managing it, he is personally bound by the contracts he makes as trustee, even when designating himself as such. The mere use by the promisor of the name of trustee or any other name of office or employment will not discharge him." *Taylor* v. *Davis*, 110 U. S. 330, 4 S. Ct. 147, 150, 28 L. Ed. 163.

This rule affecting unauthorized acts of trustees is not changed because in certain instances they are given power by statute to act. For example, the power given to them by section 45 of our Code cannot be extended to include other powers. Among the many cases in which agents have been held personally liable, see *Evans* v. *Lilly & Co.*, 95 Miss. 58, 48 So. 612, 21 Anno. Cas. 1087; *Medlin* v. *Ebenezer Methodist Church, et al.*, 132 S. C., 498, 129 S. E. 830; *Mann* v. *Payne*, 256 Mass. 233, 152 N. E. 235; *Clark* v. *O'Rourke*, 111 Mich. 108, 69 N. W. 147, 148, 66 Am. St. Rep. 389; *Hays* v. *Crutcher*, 54 Ind. 260; *Sumwalt* v. *Ridgely*, 20 Md. 114; *Burlingame* v. *Brewster*, 79 Ill. 515, 22 Am.

Rep. 177; *Hood* v. *Hallenbeck*, 7 Hun 362; 1 Mechem on Agency (2nd ed) section 1389; Williston on Contracts, section 309.

In *Carr* v. *Branch*, 85 Va. 597, 8 S. E. 476, 480, Lewis, P., said:

" 'An agent or executor who covenants in his own name, and yet describes himself as agent or executor, is personally liable, for the obvious reason that the one has no principal to bind, and the other substitutes himself for his principal.' *Duvall* v. *Craig*, 2 Wheat. 45 [4 L. Ed. 180]. And the same rule applies to the contracts of guardians, trustees and all other persons acting *en autre droit*; the addition to the signature of the word 'agent,' 'executor,' 'trustee,' etc., being regarded as a mere *descriptio personae*, unless, indeed, it appear that the party so signing his name was recognized as contracting in his representative character when the contract was made, in which case he will not be personally bound."

Crump, P., in *Forsberg* v. *Zehm*, *supra*, said, quoting from Mechem on Agency:

" 'It is of course possible, in such a case, that the assumed agent may have expressly excluded personal responsibility, or that the person extending the credit may have done so in reliance upon voluntary payments, subscriptions or funds to be raised, but where it does not appear that he has done so, the person who assumes to act will usually be personally responsible'. "

Judge Christian, in a dissenting opinion to the *Forsberg Case* stresses the question of intention, which it may be observed in passing did not there prevail.

If we were to assume that the makers of this note, at the time of its execution, expressly disclaimed personal liability and explained to Mr. Catlett that he would have to look to the church, and that its execution by them was an idle gesture, that defense could not now avail. They could not shift back upon the church a liability which the court,

at their instance, has once said, could not be imposed. Moreover the evidence does not show that any such position was taken by them when the note was made. *Arwood* v. *Hill's Adm'r*, 135 Va. 235, 117 S. E. 603, 605.

A careful examination of the testimony makes plain the fact that Mr. Catlett, in the beginning, looked to and relied upon the building committee.

It is perfectly true that he was afterwards told that he would be paid out of a fund to be contributed by the State board of missions or by somebody else, and that he accepted this statement as true and thought that he would be so paid. He said so. Doubtless he always believed that the necessary funds would come ultimately from voluntary contributions and that he would never have to call upon this committee to pay out of its own pocket, but he must also have known that there rested upon the congregation as such only a moral responsibility.

If there were no principle of estoppel involved it would still be necessary to show by clear evidence that he abandoned his original purpose and looked alone to the congregation generally. We should not readily presume that he intended to release a creditor legally liable for one only morally bound. Such conduct would run counter to common sense.

The claim here made is not new. In *Clark* v. *O'Rourke*, *supra*, the court said:

"The testimony does not justify the conclusion that the plaintiffs agreed to trust to the proceeds of fairs, etc., for their pay. Plaintiffs knew that the society as a society was irresponsible. It was entirely natural that they should inquire the methods by which the money should be raised, but no inference can be drawn from it that they agreed to look to this source alone. Should A loan B $100.00, and B promise to raise wheat on his farm with which to pay it, B would not be relieved from payment because he raised no wheat."

The test is not, did he look to the congregation, but, did he look to it alone. Broadly speaking, contractors like Catlett do expect to be paid by the congregation, but that in itself is not sufficient to release those with whom the contract was actually made.

He was told that he would be paid from a contribution not yet made and he accepted this statement at its face value. It was made after the work was done. That fund has not yet come into being. It may hereafter be collected but the plaintiff cannot be made to await such a contingency.

Defendants are estopped from asking that the plaintiff now look to the church and if they were not, the evidence does not sustain the claim that he ever agreed to look to it alone.

Finally it is said that for this note there was no consideration.

It was for an antecedent debt and when given it was understood by its makers that the time within which payment could be demanded was extended and that is enough.

This case in principle is very like *Forsberg* v. *Zehm, supra.* There a board of stewards appointed a music committee to secure the services of a musician. He was secured and that board was held liable for his compensation.

In this case the building committee contracted directly with Catlett and are liable to him jointly. and severally. It is true that Dr. M. L. Rea was not a member of it, but when Catlett was pressing for his debt he consented to and did become one of the makers of the note given him. He knew all about the situation and ratified what had been done.

For reasons given the judgment appealed from must be reversed. Plaintiff is entitled to judgment for the amount of his claim, namely for $2,350.00, with interest from February 1, 1930, plus a ten per cent attorney's fee, and it is so ordered.                    *Reversed.*